# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NORWICH PHARMACEUTICALS, INC.
6826 Highway 12
Norwich, NY 13815

        *Plaintiff*,

  v.

XAVIER BECERRA, in his official capacity as Secretary
of Health and Human Services,
200 Independence Avenue, S.W.
Washington, D.C. 20201,

ROBERT M. CALIFF, M.D., in his official capacity as
Commissioner of Food and Drugs,
United States Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993,

and

UNITED STATES FOOD AND DRUG
ADMINISTRATION,
10903 New Hampshire Avenue
Silver Spring, MD 20993,

        *Defendants*.

Civil Action No. 1:25-cv-91

## COMPLAINT

Plaintiff Norwich Pharmaceuticals, Inc. ("Norwich") files this complaint against

Defendants, Xavier Becerra, in his official capacity as Secretary of Health and Human Services;

Robert M. Califf, M.D., in his official capacity as Commissioner of Food and Drugs, United

States Food and Drug Administration; and the United States Food and Drug Administration

(collectively "FDA"), and alleges as follows:

1

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief arising out of FDA's arbitrary, capricious, and unlawful determinations that Norwich Pharmaceutical, Inc.'s Abbreviated New Drug Application ("ANDA") No. 214370 ("the '370 ANDA") for rifaximin tablets, 550 mg, for the treatment of irritable bowel syndrome with diarrhea ("IBS-D") in adults ("Norwich's '370 ANDA Product") is not entitled to a grant of "final approval" because an unidentified "first applicant" submitted an ANDA for generic rifaximin tablets, 550 mg, and maintains its eligibility for a 180-day exclusivity period for generic rifaximin 550 mg tablets under 21 U.S.C. § 355(j)(5)(B)(iv), and that the first applicant has not forfeited its eligibility for a 180-day exclusivity period under 21 U.S.C. §§ 355(j)(5)(D)(I), (IV) and/or 21 C.F.R. § 314.107(c)(3).

2.      On January 10, 2025, FDA granted tentative approval to Norwich's '370 ANDA for rifaximin 550 mg tablets for the treatment of IBS-D, but refused to grant the '370 ANDA final approval based on its arbitrary and capricious determination that final approval of the '370 ANDA is blocked by a first applicant's eligibility for 180-day exclusivity.

3.      According to FDA's Paragraph IV Certifications List (https://www.fda.gov/media/166048/download?attachment), on December 18, 2015, a first applicant submitted an ANDA for rifaximin 550 mg tablets containing a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification").

4.      On information and belief, Teva Pharmaceuticals USA, Inc. ("Teva") is the first applicant to submit an ANDA ("Teva's ANDA") for rifaximin tablets, 550 mg. *See Norwich Pharmaceuticals, Inc., v. Becerra et al.*, No. 1:23-cv-01611 (D.D.C.), ECF 56 at 1.  According to

Teva, the ANDA was originally submitted by Actavis Laboratories FL ("Actavis"), but is now owned by Teva following an acquisition.

5.      In March 2016, Salix Pharmaceuticals, Inc. ("Salix") (a subsidiary of Bausch Health Companies, Inc. ("Bausch")), the holder of New Drug Application No. 021361 for XIFAXAN (rifaximin) Tablets, 550 mg, sued Teva for infringement in the District of Delaware. *See Salix Pharms., Ltd. v. Actavis Labs. FL, Inc.*, No. 1:16-cv-00188 (D. Del.). That case settled in September 2018.

6.      According to a September 2018 press release by Bausch (https://ir.bauschhealth.com/tools/viewpdf.aspx?page={3862BA6E-F366-4B8B-80DA-7507A2665FC1), the patentee granted Teva "a nonexclusive license effective Jan. 1, 2028 to the Salix Parties' intellectual property relating to XIFAXAN 550 mg tablets in the United States," however, Teva "will be able to begin marketing the medicine earlier if another generic rifaximin product is granted approval and starts selling or distributing such generic rifaximin product before Jan. 1, 2028." In addition, the press release states that "[u]nder the terms of the agreement, beginning Jan. 1, 2028, [Teva] will have the option to: (1) market a royalty-free generic version of XIFAXAN 550 mg tablets, should it receive [FDA approval of its ANDA], or (2) market an authorized generic version of XIFAXAN 550 mg tablets with drug supply being provided by Salix."

7.      The same press release states that Teva "acknowledges the validity of the licensed patents."

8.      A Consent Judgment entered in *Salix Pharms., Ltd. v. Actavis Labs. FL, Inc.*, states that "In the event that the claims of [the asserted patents] asserted against [Teva] are not held invalid or unenforceable, absent a license or other authorization from Plaintiffs, the

[asserted patents] would be infringed by any unlicensed manufacture, sale, offer for sale, use, or importation in the United States of the generic products that are the subject of [Teva's ANDA] (the 'Actavis Product', as defined in the Parties' Settlement Agreement)." *See* Civ. No. 1:16-cv-00188, ECF No. 111 (D. Del. Sep. 14, 2018). The Consent Judgment further enjoins Teva from infringing the asserted patents, except as licensed.

9.    Norwich also owns ANDA No. 214369 ("the '369 ANDA") for rifaximin tablets, 550 mg, for the treatment of IBS-D in adults, which has obtained tentative approval. Prior to an amendment in September 2022, the '369 ANDA also sought approval for the treatment of hepatic encephalopathy (the "HE Indication"), the other FDA-approved indication for rifaximin 550 mg tablets in addition to IBS-D.

10.    In a patent litigation concerning the '369 ANDA, Norwich obtained a final, non-appealable judgment or consent decree of invalidity or noninfringement concerning each claim of each patent listed in the Orange Book as of December 2015 concerning rifaximin tablets, 550 mg, for the treatment of IBS-D in adults. *See Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 20-430, 2022 WL 3225381, at *18-22 (D. Del. Aug. 10, 2022), aff'd, 98 F.4th 1056 (Fed. Cir. 2024); *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 20-430, Order, ECF No. 180 (D. Del. May 12, 2022), aff'd, 98 F.4th 1056 (Fed. Cir. 2024). The district court also found that two asserted patents covering the HE Indication (the "HE Patents") were valid and infringed. *Salix v. Norwich,* No. 20-430, 2022 WL 3225381, at *10-11.

11.    To the extent FDA determined that the first applicant lawfully maintained its Paragraph IV certifications, FDA should have determined that any eligibility for a 180-day exclusivity period had been forfeited for rifaximin tablets, 550 mg, for the treatment of IBS-D in adults under 21 U.S.C. §§ 355(j)(5)(D)(i)(I). Norwich obtained a final, non-appealable judgment

4

and consent decree previously concerning each patent that is the subject of a Paragraph IV certification and the first applicant did not commercially market its ANDA product within 75 days of entry of the last such judgment.

12.     In addition, FDA's January 10, 2025 tentative approval letter refers to the first applicant's ANDA as an "unapproved ANDA."

13.     On information and belief, as of January 13, 2025, FDA has not granted the Teva ANDA tentative approval despite it having been pending for more than 108 months.

14.     Under 21 U.S.C. §§ 355(j)(5)(D)(IV), FDA should have determined that the first applicant, to the extent it lawfully maintained a Paragraph IV Certification, forfeited eligibility for a 180-day exclusivity period because the first applicant failed to obtain tentative approval in 30 months, as required by statute.

15.     On information and belief, the first applicant's failure to obtain tentative approval for its rifaximin 550 mg tablet ANDA product by the 30-month deadline, or any time over the past 78 months, was not "caused by a change in or review of" the approval requirements imposed after the ANDA was filed.

16.     On information and belief, the first applicant is not entitled to any extension of the 30-month deadline to obtain tentative approval under 21 U.S.C. 355(q)(1)(G).

17.     On information and belief, the first applicant is not actively pursuing approval of its ANDA in accordance with 21 C.F.R. § 314.107, based on at least the passage of time and in view of other ANDA applicants, including Norwich, having obtained tentative approval for their respective ANDA products.  Because the first applicant has not actively pursued approval of its ANDA, FDA should have granted Norwich's '370 ANDA final approval instead of tentative approval on January 10, 2025.

18.    FDA's determination that the first applicant's eligibility for a 180-day exclusivity period for rifaximin tablets, 550 mg, for the treatment of IBS-D has not been forfeited with respect to Norwich's '370 ANDA is arbitrary and capricious, not in accordance with law, and contrary to Congress's purpose in enacting the Drug Price Competition and Patent Term Restoration Act ("Hatch-Waxman Act").

19.    With this decision, FDA is causing irreparable harm, because every day final approval of Norwich's '370 ANDA Product is delayed is a day closer to another ANDA filer entering the market and shrinking or eliminating the first-mover advantage that would otherwise be enjoyed by Norwich's '370 ANDA Product.

20.    Teva, along with two other ANDA filers for this product, Sun Pharmaceutical Industries Ltd. ("Sun") and Sandoz, Inc. ("Sandoz"), are barred by a settlement reached with Salix from entering the generic rifaximin market until January 2028.  *See* Bausch Health Companies, Inc., *2021 Annual Report 10-K*, at 78–79 (Feb. 23, 2022) ("Bausch 2021 10-K").

21.    Four other generic manufacturers—Amneal, Zydus, Cipla, and Carnegie— recently submitted ANDAs seeking approval to market generic rifaximin 550 mg tablets.  Based on those ANDA submissions, Salix filed suit against Amneal on April 5, 2024, against Zydus on September 27, 2024, and against Cipla and Carnegie on November 1 and 7, 2024, respectively.  On information and belief, all four recently-filed ANDAs are subject to 30-month stays, and none of them have received tentative approval from FDA.

22.    This means that Norwich's '370 ANDA Product is in the highly valuable position to be the first generic rifaximin product for IBS-D on the market.

23.    Norwich earned this first-mover opportunity by diligently seeking FDA approval after submitting its ANDA, taking on the risks and costs of patent litigation, and successfully

obtaining final, non-appealable judgments of invalidity and noninfringement, all with the expectation that FDA would properly grant it final approval.

24.    FDA's determination regarding the first applicant's exclusivity is also adversely impacting the public interest by significantly delaying less-expensive alternatives for the treatment of IBS-D from entering the market.

25.    Norwich is therefore entitled to declaratory and injunctive relief, including but not limited to:

26.    Entry of judgment declaring that FDA's denial of final approval for Norwich's '370 ANDA is arbitrary, capricious, and contrary to law;

27.    Entry of judgment declaring that the FDA's decision that the first applicant has not forfeited the 180-day exclusivity period for rifaximin, 550 mg, for the treatment of IBS-D is arbitrary, capricious, and contrary to law;

28.    Entry of an injunction directing FDA to determine that the first applicant's eligibility for a 180-day exclusivity period for rifaximin tablets, 550 mg, for the treatment of IBS-D has been forfeited or extinguished;

29.    Entry of an injunction directing FDA to grant final approval to Norwich's '369 ANDA.

## PARTIES

30.    Plaintiff Norwich Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 6826 Highway 12, Norwich, New York 13815.

31.    Defendant Xavier Becerra is a party in his official capacity as the Secretary of the United States Department of Health and Human Services, having offices at 200 Independence Avenue, S.W., Washington, D.C. 20201.  Secretary Becerra has been authorized by the Congress

of the United States to administer the Federal Food Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. ("FDCA"). Secretary Becerra in turn has delegated his authority under the FDCA to the Commissioner of Food and Drugs.

32.     Defendant Robert Califf, M.D. is a party in his official capacity as the Commissioner of Food and Drugs, the head of and highest ranking official within FDA, which has offices at 10903 New Hampshire Avenue, Silver Spring, MD 20993. As noted above, Secretary Becerra, as Secretary of Health and Human Services, has delegated to Commissioner Califf the authority to administer the drug approval provisions of the FDCA through FDA.

33.     Defendant FDA is an agency within the Public Health Service, which is a part of Health and Human Services. FDA is charged with overseeing, *inter alia*, the human drug approval process, including the portions of that process relevant to this case. Its headquarters are located at 10903 New Hampshire Avenue, Silver Spring, MD 20993.

## JURISDICTION AND VENUE

34.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, 702, 706; the FDCA, 21 U.S.C. §§ 301 *et seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (commonly referred to as the "Hatch-Waxman Act") (codified as amended in relevant part at 21 U.S.C. § 355 and 35 U.S.C. § 271) and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, § 1102(b)(1), Pub. L. No. 108-173, 117 Stat. 2066 (2003) (codified as amended at 21 U.S.C. § 355 and 35 U.S.C. § 271) ("MMA"); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

35.     The Court has personal jurisdiction over the federal Defendants because they are either located in, and/or conduct substantial business in, and/or have regular and systematic contact with, this District.

36.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e).

37.     FDA's decision to deny final approval to Norwich's '370 ANDA and its determinations concerning the first applicant's eligibility for a 180-day exclusivity period for rifaximin is a final agency action, which constitutes an actual controversy for which Norwich is entitled to review and relief under 5 U.S.C. §§ 702, 704–706.  Norwich has standing to maintain this action pursuant to the APA as a legal entity that has suffered a legal wrong and has been adversely affected by final agency action.

38.     There exists an actual, substantial, and continuing controversy between the parties regarding FDA's application of the FDCA, the MMA's exclusivity forfeiture provisions, and FDA's regulations.  This Court may declare the rights and legal relations of the parties under 28 U.S.C. §§ 2201, 2202.

**STATUTORY BACKGROUND**

39.     The FDCA establishes the requirements for marketing drugs in the United States.  In 1984, Congress amended the FDCA to provide an abbreviated pathway for manufacturers to obtain approval for generic drugs by relying on FDA's finding that the previously approved brand drug (i.e., reference listed drug, or "RLD") is safe and effective.

40.     The central purpose of the 1984 FDCA amendments (commonly referred to as the "Hatch-Waxman Amendments" or the "Hatch-Waxman Act"), codified at 21 U.S.C. § 355 and 35 U.S.C. §§ 156, 271(e) and 282, is "'to enable competitors to bring cheaper, generic . . . drugs to market as quickly as possible.'"  *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) (citing 149 Cong. Rec. S15885 (Nov. 25, 2003)).

## New Drug Applications and Orange Book Patents

41.     Before marketing a new drug in the United States, the FDCA requires FDA to approve a New Drug Application ("NDA") submitted by the drug company seeking to market the drug. *See* 21 U.S.C. § 355(a), (b). Once approved, new drugs generally are referred to as brand name drugs because they are marketed under a trade name or trademark for the drug product rather than the chemical name for the active ingredient in the drug product.

42.     The NDA applicant must identify each patent that claims the drug or a method of using the drug that is the subject of the NDA and that could reasonably be asserted in a patent infringement action. *See* 21 U.S.C. § 355(b)(1); 21 C.F.R. § 314.53.

43.     Once FDA approves an NDA, FDA publishes the patent information submitted by the brand name drug company in the Approved Drug Products with Therapeutic Equivalence Evaluations (known as the "Orange Book"). *See* 21 U.S.C. § 355(b)(1)(A)(viii); 21 C.F.R. § 314.53(e).

## Abbreviated New Drug Applications, Patent Certifications, and Section viii Statements

44.     A company seeking FDA approval for a generic version of a new drug can submit an abbreviated new drug application ("ANDA") showing that the generic drug is bioequivalent to the branded drug. *See* 21 U.S.C. § 355(j)(2)(F).

45.     An ANDA applicant must file one of four patent certifications with FDA for each of the patents listed in the Orange Book for the branded drug. 21 U.S.C. § 355(j)(2)(A)(vii). The relevant patent certification here is the so-called "Paragraph IV certification," which declares that the Orange Book patent is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted. *Id.*; 21 C.F.R. § 314.94(a)(12)(i)(A)(4)(i).

46.    An alternative to filing a Paragraph IV or other patent certification is to provide a statement filed under 21 U.S.C. § 355(j)(2)(A)(viii) that the applicant is not seeking FDA approval for a patented method of use (a "section viii statement").  *See Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1360–61 (Fed. Cir. 2003).

47.    The approval of an ANDA containing only a section viii statement is governed by 21 U.S.C. § 355(j)(5)(A) rather than 21 U.S.C. § 355(j)(5)(B), which concerns the approval of an ANDA containing a patent certification.  *See also* 21 C.F.R. § 314.107(b)(1)(ii) (describing FDA's "immediate[]" approval of an ANDA, "if the applicant submits an appropriate statement [] explaining that a method-of-use patent does not claim an indication or other condition of use for which the applicant is seeking approval . . . .").

48.    Paragraph IV certifications and section viii statements are "mutually exclusive alternatives," and the "factor that determines which is proper is whether the use patent at issue actually claims a use for which the generic applicant is seeking approval.  If it does, a paragraph IV certification is required; if not, the ANDA should include a section viii statement." *TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69, 74 (D.D.C. 2003), *aff'd sub nom. Purepac Pharm. Co. v. Thompson*, 354 F.3d 877 (D.C. Cir. 2004).

49.    According to FDA, "if a patent claims a method of using the listed drug, and labeling for the ANDA applicant's proposed drug product does not contain any indications covered by the method of use patent, the ANDA applicant" should submit a section viii statement, not a Paragraph IV certification.  ANDA Regulations, Patent and Exclusivity Provisions, 59 Fed. Reg. 50338, 50347 (Oct. 3, 1994).

## ANDA Approvals and Exclusivities

50.     An ANDA applicant that submits a Paragraph IV certification must provide notice of such certification – or a "Notice Letter" – to the patent owner and the NDA holder.  If the patent owner files a patent infringement action concerning a patent timely listed in the Orange Book within 45 days of receiving the Notice Letter, FDA may not approve the ANDA until the earlier of 30 months or a court decision that the patent is not infringed or invalid.  *See* 21 U.S.C. § 355(j)(2)(B)(iii), 355(j)(5)(B)(iii).  This is known as the "30-month stay."  Conversely, if a patent action is not filed within 45 days, or a patent action is filed that only asserts patents that were listed in the Orange Book *after* the date of the original ANDA submission (excluding an amendment or a supplement), FDA may immediately approve the ANDA subject to the provisions of Section 355(j)(5)(B).  [21 U.S.C. § 355(j)(5)(B)(iii); 21 U.S.C. § 355(j)(5)(B)(iii).

51.     To incentivize patent challenges, the Hatch-Waxman Act provides 180 days of generic marketing exclusivity to the "first applicant," *i.e.*, the applicant that is first to submit "a substantially complete application that contains and lawfully maintains a [Paragraph IV] certification . . . ."  21 U.S.C. § 355(j)(5)(B)(iv)(II)(bb).  This exclusivity operates to block only approval of a subsequent ANDA that "contains a [Paragraph IV] certification . . . and is for a drug for which a first applicant has submitted an application containing such a certification" for a period of 180 days after the first commercial marketing of the drug.  21 U.S.C. § 355(j)(5)(B)(iv)(I).  However, a first applicant's exclusivity may be extinguished if the first applicant does not lawfully maintain its Paragraph IV certification.

52.     Importantly, "[i]f an ANDA applicant seeks to omit the approved method(s) of use covered by a listed patent with a section viii statement, another ANDA applicant's paragraph IV certification to that same patent, and any related 180-day exclusivity, would not block

approval of the ANDA that contained the section viii statement."  180-Day Exclusivity:

Questions and Answers, Draft Guidance for Industry, at 13 (Jan. 2017) ("180-Day Exclusivity

Q&A Guidance")

53.      In response to concerns that first applicants were "parking" their exclusivity to

limit generic access to the market as part of settlement agreements with brand manufacturers,

Congress added conditions under which the first applicant may "forfeit" 180-day exclusivity

eligibility in the MMA.  *See Dey Pharma, LP v. Sunovion Pharms. Inc.*, 677 F.3d 1158, 1164–65

(Fed. Cir. 2012); 21 U.S.C. § 355(j)(5)(D).  The two forfeiture provisions relevant here are the

so-called "failure to market" and "failure to obtain timely tentative approval" provisions.

54.      The "failure to market" forfeiture occurs if the first applicant fails to market the

drug by the later of two dates, both of which are required to effectuate forfeiture.  21 U.S.C. §

355(j)(5)(D)(i)(I).  The first date, under 21 U.S.C. § 355(j)(5)(D)(i)(I)(aa), is either 30 months

after submission or 75 days after final approval of the first applicants' ANDA.  The second date,

under 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb), can be effectuated either by the first applicant, or by

any other applicant whose ANDA has been granted tentative approval at any time.  The (bb) date

occurs 75 days after a court enters either a settlement order or a final, non-appealable judgment

that each relevant patent is invalid or not infringed, or if the patent is withdrawn from the Orange

Book by the NDA holder.

55.      The "failure to obtain timely tentative approval" forfeiture occurs when the first

applicant fails to obtain tentative approval within 30 months of filing its ANDA.  21 U.S.C. §

355(j)(5)(D)(i)(IV).  The only exception in this forfeiture provision is if the first applicants'

failure was "caused by a change in or review of" the approval requirements imposed after the

ANDA was filed.  *Id.*  In addition, 21 U.S.C. § 355(q)(1)(G) provides that if "approval of the

[first applicant's ANDA] was delayed because of a [citizen] petition, the 30-month period . . . is deemed to be extended by a period of time equal to the period beginning on the date on which the Secretary received the petition and ending on the date of final agency action on the petition."

56.    When FDA deems that an ANDA is eligible for final approval but for unexpired Orange Book patents or exclusivities, FDA will instead grant the application tentative approval.  *See* ANDA Submissions – Amendments and Requests for Final Approval to Tentatively Approved ANDAs, at 4 (Sept. 2020).  But, "[a] drug product that is granted tentative approval is not an approved drug and will not be approved until FDA issues an approval letter[.]"  21 C.F.R. § 314.3(b).  As such, "tentative approval does not allow the applicant to market [its] generic drug product."  Drugs@FDA Glossary of Terms, U.S. Food and Drug Admin. (Nov. 14, 2017).  Tentative approval therefore "delays final approval of the generic drug product until all patent or exclusivity issues have been resolved."  *Id.*

## FACTUAL BACKGROUND

### Salix's Xifaxan and Orange Book Patents

57.    Salix is the holder of NDA No. 021361 ("Salix's NDA") for rifaximin tablets under the brand name Xifaxan, which is currently the only rifaximin product available on the market.  *See* Orange Book, 44th Edition, at 3-409 (Jan. 2024).  FDA first approved Xifaxan 200 mg tablets in 2004.  Xifaxan 200 mg tablets are indicated for the treatment of Travelers diarrhea.

58.    FDA later approved supplemental new drug applications for Xifaxan 550 mg rifaximin tablets for the treatment of IBS-D in adults and for the reduction of the risk of overt hepatic encephalopathy ("HE") recurrence in adults.  Each of these indications for Xifaxan tablets has a different dosing regimen.  *See* Label for XIFAXAN® (rifaximin) tablets, for oral

use, Bridgewater, NJ: Valeant Pharmaceuticals North America LLC, Initial U.S. Approval: 2004 at 1.2, 1.3, 2.2, and 2.3.  By December 2019, Salix had listed 23 patents in the Orange Book.

### Norwich's ANDA No. 214370

59.    On December 20, 2019, Norwich submitted ANDA No. 214370 to FDA, seeking authorization to market generic rifaximin 200 mg tablets.  On January 20, 2020, FDA acknowledged and received for review ANDA No. 214370.  On October 18, 2022, FDA tentatively approved Norwich's 200 mg rifaximin tablets.

60.    On May 10, 2024, Norwich submitted a new dosage strength amendment to the '370 ANDA for 550 mg rifaximin tablets for the treatment of IBS-D to FDA.  On May 23, 2024, FDA acknowledged receipt of Norwich's amendment.

61.    Norwich's 370 ANDA is not subject to any stay of regulatory approval under 21 U.S.C. § 355(j)(5)(B)(iii) because the patentee and/or NDA holder did not file a patent action with 45 days of receiving a notice letter concerning any patent listed in the Orange Book before the original submission date of the 370 ANDA.

62.    On January 10, 2025, FDA tentatively approved Norwich's '370 ANDA for rifaximin tablets, 550 mg, for the treatment of IBS-D in adults.  FDA's decision not to grant Norwich's 550 mg rifaximin tablets final approval was based on its arbitrary and capricious and unlawful determination that the '370 ANDA is subject to a first applicant's 180-day exclusivity period.  Citing its privacy regulations under 21 CFR 314.430(d)(1), FDA did not disclose any basis or analysis to support its determination that the first filer had not forfeit eligibility for exclusivity.

### Other ANDA Applicants for Rifaximin 550 mg Tablets

63.    On information and belief, Teva and at least two other rifaximin ANDA applicants, Sandoz  and Sun, engaged in and settled their patent litigation with Salix, Bausch

Health Ireland Ltd., and Alfasigma S.p.A., whereby they agreed to refrain from marketing their generic products until January 1, 2028, with one exception described below. *See* Press Release, Bausch Health, Bausch Health Announces Resolution of XIFAXAN® Intellectual Property Litigation (Sep. 12, 2018)[1] (hereinafter, "Bausch-Teva Press Release"); Press Release, Bausch Health, Bausch Health And Alfasigma Announce Resolution Of XIFAXAN® Intellectual Property Litigation (May 06, 2020)[2]; Press Release, Bausch Health, Bausch Health And Alfasigma Announce Resolution Of XIFAXAN® Intellectual Property Litigation (Sep. 22, 2020).[3]

64.     As discussed, the terms of that settlement also allow Teva the option to launch an "authorized generic" of rifaximin – an unbranded version of Xifaxan marketed under Salix's NDA – instead of selling its own generic ANDA product. *See* Paragraph 6. Finally, the settlement allows all three manufacturers to market their generic rifaximin products before 2028 should a competitor enter the market. *Id.*

65.     In addition, Amneal, Zydus, Cipla, and Carnegie recently submitted ANDAs seeking approval to market generic rifaximin 550 mg tablets. Based on those ANDA submissions, Salix brought a patent infringement case against Amneal on April 5, 2024, against Zydus on September 27, 2024, and against Cipla and Carnegie on November 1 and 7, 2024, respectively. On information and belief, all four ANDAs are subject to 30 month stays, and none of them have received tentative approval from FDA.

---

[1] *Available at* https://www.prnewswire.com/news-releases/bausch-health-announces-resolution-of-xifaxan-intellectual-property-litigation-300710753.html.
[2] *Available at* https://www.reuters.com/article/business/healthcare-pharmaceuticals/bausch-health-and-alfasigma-announce-resolution-of-xifaxan-intellectual-property-idUSFWN2CO0NK/.
[3] *Available at* https://ir.bauschhealth.com/news-releases/2020/09-22-2020-120037282.

## THE FIRST APPLICANT HAS FORFEITED 180-DAY EXCLUSIVITY

66.     A first applicant cannot maintain its eligibility for 180-day exclusivity based on expired patents.  Therefore, any eligibility for a first applicant's exclusivity period for rifaximin 550 mg tablets based on an expired patent listed in the Orange Book is extinguished.

67.     As FDA has also recognized, a section viii statement to a method-of-use patent under 21 U.S.C. §§ 355(j)(2)(A)(viii) does not expose a subsequent applicant to a first applicant's 180-day exclusivity period.  In fact, FDA's regulation expressly states that an application containing a section viii statement in the absence of a Paragraph IV certification to a claim of the same patent is "immediately" approvable.  21 C.F.R. § 314.107(b)(1)(ii); *see also* 180-Day Exclusivity Q&A Guidance at 13.

68.     Norwich is not a subsequent Paragraph IV applicant with respect to any claim of any patent covering the HE Indication.  The '370 ANDA does not seek FDA approval for the HE Indication and does not challenge any patent claim covering the HE Indication.  Pursuant to its statutory right and obligation under FDA's regulation, the '370 ANDA contains a section viii statement to each patent concerning the HE Indication.  Therefore, a first applicant's eligibility for 180-day exclusivity based on any patent covering the HE Indication cannot block approval of the '370 ANDA.

69.     21 U.S.C. §§ 355(j)(5)(B)(iv)(I) limits the eligibility for a first applicant's 180-day exclusivity period to only the patents for which a subsequent applicant also submitted a Paragraph IV Certification.  As the statute states, the subsequent application must contain a Paragraph IV Certification and be "for a drug for which a first applicant has submitted an application containing such a certification."

70.     Even if an applicant qualifies for 180-day exclusivity, the exclusivity may be forfeited under rules established in 21 U.S.C. § 355(j)(5)(D).  Under 21 U.S.C. §

355(j)(5)(D)(i)(I)(bb), eligibility for 180-day exclusivity may be forfeited based on a court

decision or consent decree concerning the "qualifying" patent.  Subsection (bb) refers back to

Section 355(j)(5)(B)(iv) to identify "each of the patents with respect to which the first applicant

submitted and lawfully maintained a certification qualifying the first applicant for the 180-day

exclusivity period under subparagraph (B)(iv)."

71.    A judgment or consent decree of invalidity or noninfringement obtained by a first

applicant or "any other applicant concerning a "qualifying" patent extinguishes the first

applicant's eligibility for any 180-day exclusivity period based on that patent, if the first

applicant does not commercially market a generic product within 75 days.

72.    Each of the first applicant's 180-day exclusivity-bearing patents for rifaximin

tablets, 550 mg, for the treatment of IBS-D in adults is subject to a final, non-appealable decision

or consent decree of invalidity or noninfringement.  *See Salix Pharms., Ltd. v. Norwich Pharms.,*

*Inc.*, No. 20-430, 2022 WL 3225381, at *18-22 (D. Del. Aug. 10, 2022), *aff'd*, 98 F.4th 1056

(Fed. Cir. 2024); *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 20-430, Order, ECF No.

180  (D. Del. May 12, 2022), aff'd, 98 F.4th 1056 (Fed. Cir. 2024).

73.    Under section 355(j)(5)(D), Teva forfeited its exclusivity if it failed to market its

drug the later of two dates, the (aa) date and the (bb) date.  The "(aa)" date under 21 U.S.C. §§

355(j)(5)(D)(i)(I)(aa) is June 18, 2018 (i.e., 30 months after the submission of the first

applicant's ANDA).

74.    The "(bb)" date under 21 U.S.C. §§ 355(j)(5)(D)(i)(I)(bb) is September 3, 2024

for U.S. Patent No. 8,309,569 and July 26, 2022 (i.e., 75 days after the entry of a final judgment)

for each of the other patents that are the subject of a Paragraph IV Certification in Norwich's

'370 ANDA.  No generic rifaximin tablets, 550 mg, for the treatment of IBS-D were marketed by any applicant before either of these dates.

75.      FDA granted Norwich's '369 ANDA tentative approval for the first time on June 2, 2023.

76.      Therefore, any eligibility for a 180-day exclusivity period based on any of the patents that are the subject of a Paragraph IV certification in Norwich's '370 ANDA has been forfeited with respect to rifaximin tablets, 550 mg, for the treatment of IBS-D in adults, as of these "(bb)" dates.  FDA's decision that the first applicant maintained eligibility for a 180-day exclusivity period notwithstanding these final, non-appealable judgments cannot stand; it is arbitrary and capricious and not made in accordance with the law.

77.      The statute also provides for forfeiture if an applicant fails to obtain tentative approval within 30 months after the date the application is filed.  21 U.S.C. § 355(j)(5)(D)(i)(IV).  The only exception to this is if the failure to timely obtain tentative approval must be "caused by a change in or a review of the requirements for approval of the application imposed after the date on which the application is filed."  FDA has interpreted this to mean that exclusivity will be preserved only if the "evidence demonstrates that there was a change in, or a review of, the requirements for approval and that the applicant was actively addressing issues related to the change in, or review of, approval requirements . . . and these efforts precluded tentative approval or final approval at that time." 180-Day Exclusivity Q&A Guidance, at 22.

78.      Relevant to the first applicant's failure to market forfeiture based on a failure to obtain tentative approval and FDA's failure to abide by its regulation requiring a first applicant to actively pursue approval, the January 10, 2025 Tentative Approval Letter concerning the '370 ANDA states as follows:

Although FDA cannot disclose the identity of the first applicant, this letter reflects FDA's determination that an ANDA applicant is eligible for 180-day exclusivity that precludes FDA from granting final approval to your Rifaximin Tablets, 550 mg, at this time. Due to the regulatory restriction on disclosure of information in an unapproved ANDA, however, see 21 CFR 314.430(d)(1), we cannot provide you the basis or bases on which the Agency determined that the first applicant for Rifaximin Tablets, 550 mg, has not forfeited its eligibility for 180-day exclusivity because that analysis rests on information contained in an unapproved ANDA that cannot be disclosed. Nor can we provide our analysis of your argument regarding 21 CFR 314.107(c)(3), because that analysis also rests on information contained in an unapproved ANDA that cannot be disclosed.

79.    Notwithstanding the degree of information beyond Norwich's reach, the first applicant cannot have been diligent in pursuing any type of approval.  The first applicant's ANDA was submitted on December 18, 2015, and has now gone more than nine years without ever obtaining tentative approval from FDA.  The 30-month deadline to obtain approval expired nearly six years ago on June 18, 2018.  By contrast, subsequent ANDA filers have obtained tentative approval in under 18 months.  For example, Sandoz filed its ANDA No. 213713 on July 1, 2019.  That ANDA received tentative approval on December 29, 2020, which is only 17 months, 29 days after filing the ANDA.

80.    FDA's determination that the first applicant has maintained its eligibility for this exclusivity period, is excused from any obligation to timely obtain tentative approval, has actively pursued approval of its ANDA, and effectively has an endless period to secure tentative approval for its ANDA is arbitrary and capricious and contravenes the purpose of the failure to obtain tentative approval provisions by creating a bottleneck to the availability of generic rifaximin tablets, 550 mg, for the treatment of IBS-D.

81.    For the same reasons, FDA should have immediately approved Norwich's '370 ANDA because, under 21 C.F.R. § 314.107(c), the first applicant "is not actively pursuing

20

approval of its ANDA," and the '370 ANDA is otherwise approvable. FDA's determination that the first applicant is actively pursuing approval of its ANDA despite having failed to obtain tentative approval for more than 108 months is arbitrary and capricious and an abuse of discretion.

## NORWICH WILL SUFFER IRREPARABLE HARM
## ABSENT IMMEDIATE RELIEF FROM THIS COURT

82.     But for FDA's failure to give final approval to Norwich's '370 ANDA, Norwich's '370 ANDA product is positioned to enjoy a significant first-mover advantage in the generic rifaximin market for treating IBS-D. Unlike the earlier ANDA filers – Teva, Sun, and Sandoz – Norwich did not settle with Salix for a 2028 entry but took on the burden and expense of litigating Salix's asserted patents through trial and appeal, succeeding in proving invalid the patents covering the rifaximin polymorph and the methods of treating IBS-D.

83.     Although Teva, Sun, and Sandoz may enter the market sooner if Norwich's '370 ANDA product launches first, they will require time to obtain final approvals for their respective products, make the required launch preparations such as purchasing material and manufacturing product, and to otherwise abide by any conditions of their settlement agreements. Teva and Sun have not even obtained tentative approval to market generic rifaximin 550 mg tablets. The four later ANDA filers – Amneal, Zydus, Cipla, and Carnegie – also lack tentative approval to date and are subject to 30-month stays.

84.     Norwich's '370 ANDA product will thus have a *de facto* generic first-mover advantage if this Court orders FDA to correct its mistake and grant final approval to Norwich's '370 ANDA. This advantage is highly valuable to Norwich and cannot be recouped through monetary damages or recaptured by later market entry.

85.     Furthermore, as the first generic alternative, Norwich's '370 ANDA product would stand to gain and maintain a significant larger share of the generic rifaximin market for IBS-D than if it launches as just one several generic alternatives.  Such loss of market share constitutes irreparable harm.

86.     Still further, a period of marketing exclusivity provides a number of more intangible opportunities, including access to valuable customers and the accrual of industry prestige and goodwill.  The generic drug business is highly competitive and the large wholesalers prize the ability to offer newly-available generic drugs to their own customers and thus often aggressively pursue relationships with generic first-movers.  Loss of such goodwill and similar market opportunities that are difficult to quantify or adequately compensate constitutes irreparable harm.

## GRANTING A PRELIMINARY INJUNCTION
## WILL NOT SUBSTANTIALLY INJURE ANY INTERESTED PARTY

87.     In contrast to the significant and irreparable harm that Norwich will suffer absent preliminary relief, ordering FDA to grant final approval to Norwich's '370 ANDA would not cause substantial injury to FDA or any interested party.

88.     FDA's only interest here is in the correct implementation of the FDCA and the establishment of clear rules to guide the generic pharmaceutical industry.  *See* 21 U.S.C. § 393 (describing one of the objectives of FDA's agency plan as "maximizing the availability and clarity about the process for review of applications and submissions . . . made under [the FDCA]"); *see also* 65 Fed. Reg. 67012, 67013 ("To strengthen its performance, FDA developed partnerships with stakeholders and stimulated cooperation and partnership by making its activities more understandable and accessible to stakeholders").  The prompt resolution of this suit in Norwich's favor thus promotes FDA's interests.

89.     There is likewise little or no risk of harm to Teva, the assumptive "first applicant" referenced by FDA.  Under the terms of its settlement with Salix, Teva is barred from launching either its own generic or an authorized generic prior until January 2028 unless another ANDA filer obtains FDA approval and comes to market.  Teva's ability to enter the market will therefore be accelerated if FDA is ordered to grant final approval to Norwich's '370 ANDA. The same is true for Sun and Sandoz.

90.     Teva will also not lose any first-entry opportunity because the settlement agreements with Salix permit at least Sun and Sandoz to launch at the same time as Teva.

## PRELIMINARY RELIEF WILL FURTHER THE PUBLIC INTEREST

91.     Granting Norwich's motion for a preliminary injunction will further the public interest by permitting Norwich's '370 ANDA product to open a generic market for rifaximin 550 mg tablets for the treatment of IBS-D.

92.     Generic competition for the IBS-D treatment will significantly lower prices for IBS-D patients and payors.  Data from FDA generally show that prices for a drug can drop by as much as 75% within a year of the first generic approval, and that the median price reduction for a single generic on the market is between 31% and 39%.  Thus, the availability of generic rifaximin for treating IBS-D serves the public interest by providing consumers increased access to cheaper, safe generic drugs.

93.     The FDCA is structured to give incentives to companies to file ANDAs so that lower-cost generic drugs are brought to market as soon as possible.  "[T]he public has an interest in receiving the benefit of ANDA-approved generic drugs as soon as those products can lawfully come to market." *Pharmacia & Upjohn Co.*, 274 F. Supp. 2d at 614, *aff'd in relevant part*, 85 F. App'x 205 (Fed. Cir. 2003).

23

94.     The availability of generic rifaximin for treating IBS-D further serves the public interest by providing a more diverse supply of drugs.  Without generic manufacturers, supplies of that drug are susceptible to shortages if, for instance, the sole manufacturer encounters "manufacturing and quality problems, delays, [or] discontinuations."  FDA, *Drug Shortages* (June 27, 2024), www.fda.gov/drugs/drug-safety-and-availability/drug-shortages.

95.     The entry of Norwich's generic rifaximin product for treating IBS-D will increase the number of sources, reducing the risk of shortages and helping to ensure that patients receive the medication they need.  *See* FDA, *Generic Drugs Can Help Promote Health Equity*, www.fda.gov/media/173765/download ("Generic drugs can help stabilize the supply of medicines and reduce the risk of drug shortages.").

96.     Ensuring that FDA treats all ANDA applicants the same and interprets the FDCA properly in this case is similarly beneficial to the public.  *See Bracco Diagnostics*, 963 F. Supp. at 30 ("[r]equiring [FDA] to act lawfully is also very much in the public interest."); *Whitaker*, 248 F. Supp. 2d at 16 ("[I]t is clearly in the public interest to ensure that governmental agencies, such as the FDA, fully comply with the law.").

## COUNT I
## (VIOLATION OF THE FDCA AND APA)

97.     Norwich repeats and realleges Paragraphs 1 to 96 of the Complaint.

98.     As set forth above, FDA improperly denied Norwich final approval of Norwich's '370 ANDA to which it is entitled.

99.     In so doing, FDA has taken this final agency action without providing any reasoned basis for its decision.

100.    The first applicant has failed to market its ANDA product by the dates established under 21 U.S.C. § 355(j)(5)(D)(i)(I) for each exclusivity-bearing patent with respect to rifaximin tablets, 550 mg, for the treatment of IBS-D.

101.    The first applicant has failed to obtain tentative approval of its ANDA prior to the statutory 30-month forfeiture deadline, and no statutory exception to forfeiture applies.  See 21 U.S.C. § 355(j)(5)(D)(i)(IV).

102.    The first applicant has forfeited its eligibility for exclusivity under 21 C.F.R. § 314.107(c)(3) because it is not actively pursuing approval of its ANDA.

103.    Because the first applicant has forfeited its right to any 180-day period of marketing exclusivity, FDA's final decision that any exclusivity period blocks approval of Norwich's '370 ANDA final approval is arbitrary, capricious, and contrary to law within the meaning of 5 U.S.C. § 706(2)(A), in excess of statutory authority within the meaning of 5 U.S.C. § 706(2)(C), and in violation of the FDCA.

104.    FDA's final decision that the first applicant has maintained its right to the 180-day exclusivity period and to deny Norwich's '370 ANDA final approval constitutes final agency action for which Norwich is entitled to judicial review and relief under the APA.

105.    The loss of the first-mover advantage for Norwich's '370 ANDA Product will cause irreparable harm and is contrary to the public interest.

106.    Norwich has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Norwich Pharmaceuticals, Inc. requests this Court to enter judgment in its favor and against Defendants Xavier Becerra, in his official capacity as Secretary of Health and Human Services; Robert Califf, M.D., in his official capacity as

Commissioner of Food and Drugs, United States Food and Drug Administration; and the United

States Food and Drug Administration as follows:

A.    Entry of judgment declaring that the FDA denial of final approval for Norwich's '370 ANDA is arbitrary, capricious, and contrary to law;

B.    Entry of judgment declaring that the FDA's decision that the first applicant has not forfeited the 180-day exclusivity period for rifaximin, 550 mg, is arbitrary, capricious, and contrary to law;

C.    Entry of an injunction directing FDA to determine that the first applicant has forfeited the 180-day exclusivity for rifaximin tablets, 550 mg, for the treatment of IBS-D;

D.    Entry of an injunction directing FDA to grant final approval to Norwich's '370 ANDA; and

E.    Such other and further relief as this Court deems just and proper.


Dated: January 13, 2025                    Respectfully submitted,

                                           /s/*Matthew S. Murphy*
                                           Matthew S. Murphy (DDC Bar No. CT0025)
                                           AXINN, VELTROP & HARKRIDER LLP
                                           90 State House Square
                                           Hartford, CT 06103
                                           T: (860) 275-8100
                                           F: (860) 275-8101
                                           mmurphy@axinn.com

                                           *Attorney for Plaintiff NorwichPharmaceuticals, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that, on January 27 2025, a copy of the foregoing

**COMPLAINT**, filed through the Court's CM/ECF system, was caused to be served upon the following individuals by electronic mail:

GABRIEL I. SCHONFELD
Consumer Protection Branch
Civil Division
U.S. Department of Justice
PO Box 386
Washington, DC 20044-0386
(202) 353-1531
(202) 514-8742 (fax)
Gabriel.I.Schonfeld@usdoj.gov

<u>/s/*Matthew S. Murphy*</u>
Matthew S. Murphy (DDC Bar No. CT0025)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
mmurphy@axinn.com

*Attorney for Plaintiff Norwich Pharmaceuticals, Inc.*