**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NORWICH PHARMACEUTICALS, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 25-091 |
| | (BAH) Judge Beryl A. Howell |
| ROBERT F. KENNEDY JR., *in his official capacity as Secretary of Health and Human Services, et al.*, | ~~FILED UNDER SEAL~~ **REDACTED AFTER REVIEWED BY PARTIES** |
| Defendants, | |
| TEVA PHARMACEUTICALS USA, INC. | |
| Intervenor-Defendant, | |
| SALIX PHARMACEUTICALS, INC. | |
| Intervenor-Defendant. | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Norwich Pharmaceuticals, Inc. ("Norwich"), a pharmaceutical company, needs a time machine for the remedy sought in this lawsuit of an order directing approval of its Abbreviated New Drug Application ("ANDA") for rifaximin tablets. *See* Norwich's Reply Supp. Mot. Summ. J. ("Norwich's Reply") at 2, ECF No. 74 ("The important context for this dispute is that the approval of Norwich's . . . ANDA would not have been blocked . . . prior to the [Medicare Modernization Act passed in 2003].").  Absent such a miraculous device, Norwich turns to this lawsuit against the United States Food and Drug Administration ("FDA"), Robert F. Kennedy Jr., the Secretary of Health and Human Services, and Sarah Berner, the Acting Commissioner of the FDA (collectively "government defendants"), claiming, under the Administrative Procedure Act, 5 U.S.C. § 706 *et seq.*, that the FDA's decision to grant only

tentative approval to its ANDA for rifaximin tablets, due to a competitor's 180-day exclusivity period to market the same drug in the same form, is "arbitrary, capricious, and contrary to law." Amend. Compl. ¶ 100, ECF No. 35.[1] That competitor, Actavis Laboratories FL Inc. ("Actavis"), a wholly owned subsidiary of Teva Pharmaceuticals USA, Inc. ("Teva"), and Salix Pharmaceuticals, Inc. ("Salix"), the owner of the "brand name" drug rifaximin tablets, which Norwich seeks to use as the reference drug for ANDA approval, have intervened as defendants (collectively "intervenor defendants").[2] *See* Teva's Mot. to Intervene at 1, ECF No. 10; Min. Order (Jan. 28, 2025) (granting unopposed motion); Salix's Mot. to Intervene at 1, ECF No. 14; Min. Order (Jan. 30, 2025) (granting unopposed motion).

To force this claim to the front of this Court's queue of pending cases for resolution, Norwich initially filed a motion for preliminary injunctive relief and now seeks expedited summary judgment, arguing that the FDA's decision was erroneous because Actavis forfeited its 180-day exclusivity to market rifaximin tablets for failing to market and failing to obtain tentative approval. Norwich's Mot. Summ. J. ("Norwich's MSJ") at 1-2, ECF No. 22. Government and intervenor defendants have filed cross-motions for summary judgment, claiming that the current statutory regime forecloses Norwich's position. Gov't's Cross-Mot. Summ. J. ("Gov't's XMSJ") at 1, ECF No. 50; Gov't's Mem. Supp. XMSJ ("Gov't's Opp'n") at 1-2, ECF No. 61; Teva's Cross-Mot. Summ. J. ("Teva's XMSJ") at 1, ECF No. 55; Teva's Mem. Supp. XMSJ ("Teva's Opp'n") at 1-4, ECF No. 66; Salix's Cross-Mot. Summ. J. ("Salix's XMSJ") at 1-2, ECF No. 66.

---

[1]    Although plaintiff originally named as defendants the former Secretary of the U.S. Health and Human Services and the former Commissioner of the FDA, the current holders of those positions are "automatically substituted as [parties]" in their place, pursuant to Federal Rule of Civil Procedure 25(d).

[2]    All parties and the administrative record refer to Actavis as opposed to Teva, and that practice is followed in this Memorandum Opinion.

While the primary task facing the Court involves resolving straightforward questions of statutory interpretation, the palpable frustration present in Norwich's briefs and apparent in its litigation strategy is not unfounded. The ten-years' lapse between Actavis' submission of its initial ANDA and the FDA's still-outstanding grant of tentative approval may evince the need for a statutory solution that better balances the need for increased speed at which the FDA grants approval of generic drugs and rewards for the first generic manufacturer that challenges patents covering a brand name drug. *See Mylan Lab'ys Ltd. v. FDA*, 910 F. Supp. 2d 299, 311 (D.D.C. 2012) ("[I]n enacting the Hatch–Waxman Act[,] Congress sought to promote generic competition. However, Congress created the 180–day exclusivity period for that very purpose and included in the statute an express exception to forfeiture for delays in tentative approval caused by changes in approval requirements beyond an ANDA applicant's control."). That solution, however, lies with Congress and not the courts. Further, as discussed *infra* Parts I.B.1, 4., Norwich's complaint of the delay at issue here may be overstated given that (1) Actavis' generic drug will be on the market almost two years *earlier* than it could otherwise be in light of Salix's last expiring patent; and (2) litigation between Salix and Norwich remains ongoing to determine whether Norwich's ANDA at issue in this lawsuit infringes on Salix's patents. In the end, no matter which party presents the best policy choices here, the statute dictates the result. For the reasons stated below, Norwich's motion for summary judgment is denied, and the government and intervenor defendants' cross-motions for summary judgment are granted.[3]

---

[3]     Norwich has requested a hearing and sought leave to file a surreply. Norwich's Mot. for Hearing & Leave to File Sur-Reply ("Norwich's Mot.") at 1-3, ECF No. 80. This request for a hearing is denied as unnecessary given the voluminous record in this case and the clarity of both the legal and factual issues for the proper resolution of the pending motions. LCvR 7(f) (authorizing oral hearings at "the discretion of the Court"). Norwich's request for leave to file a surreply is similarly denied as this case benefited from over 600 pages of briefing, including motions, memoranda, exhibits and affidavits. Indeed, Norwich itself has filed over 300 pages of briefs, memoranda, and supporting materials. Further, while Norwich supposedly identified five "new and incorrect arguments" raised in intervenor-defendants' reply briefs, Norwich's Mot. at 1-3, the first three pages, at least, of the surreply merely "reiterate[] prior arguments," obviating the need for a surreply. *Flynn v. Veazey Const. Corp.*, 310

## I.    BACKGROUND

The relevant statutory, factual and procedural background to resolve the pending motions is reviewed below.

### A.    Statutory Background

The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, provides the procedures that manufacturers must follow to obtain FDA approval to sell pharmaceutical products.  To get a new, branded drug to market, a manufacturer "must file a New Drug Application (NDA) with the Food and Drug Administration (FDA), showing the new drug is safe and effective and identifying the number and expiration date of any patent or patents applicable to the drug."  *Teva Pharms., USA, Inc. v. Leavitt* ("*Teva v. Leavitt*"), 548 F.3d 103, 104 (D.C. Cir. 2008) (citing 21 U.S.C. §§ 355(a)-(b)).  The FDA must "publish this information" and does so by "publishing a directory of *Approved Drug Products with Therapeutic Equivalence Evaluations* (also known as the Orange Book)."  *Id.* (citing 21 U.S.C. § 355(b)(1)).

"Prior to 1984, companies that manufactured generic medicines . . . also had to file NDAs supported by full investigative studies."  *Teva Pharms. USA, Inc. v. Azar* ("*Teva v. Azar*"), 369 F. Supp. 3d 183, 186 (D.D.C. 2019).  In 1984, however, Congress passed the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585, popularly referred to as the "Hatch-Waxman Amendments," which "eliminated the requirement that generic manufacturers submit full NDAs and allowed generic manufacturers to 'seek FDA approval by submitting an abbreviated new drug application ('ANDA').'"  *Id.*  at 187 (quoting

---

F. Supp. 2d 1886, 189 (D.D.C. 2004) (describing *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002)).  In any event, "[t]he decision to grant or deny leave to file a surreply is committed to the sound discretion of the court," *Schmidt v. Shah*, 696 F. Supp. 2d 44, 59 (D.D.C. 2010), and to the extent that intervenor-defendants' arguments are "truly new," *THEC Int'l-Hamdard Codova Grp.-Nazari Constr. Co. v. Cohen Mohr, LLP*, 301 F. Supp. 3d 1, 6 (D.D.C. 2018), which does not appear to be the case, "the court [can] . . . ignore those arguments in resolving the motion," *Flynn*, 310 F. Supp. 2d at 189.

*Serono Lab'ys, Inc. v. Shalala*, 158 F.3d 1313, 1316 (D.C. Cir. 1998)); *see also* 21 U.S.C. §
355(j).  The ANDA process permits a generic manufacturer to "'piggyback[] on the original
manufacturer's evidence of safety and efficacy,' and need demonstrate only that the generic drug
has the same active ingredient(s), route of administration, dosage form, conditions of use, and
strength as the approved drug, and that the generic drug has an appropriate label and is
bioequivalent to the approved drug." *Teva v. Azar*, 369 F. Supp. 3d at 187 (internal citation
omitted) (quoting *Teva v. Leavitt*, 548 F.3d at 104); *see also* 21 U.S.C. § 355(j)(2)(A); *id.* §
355(j)(4).

     "ANDAs must address patents that cover or might cover the relevant drugs."  *Purepac
Pharm. Co. v. Thompson*, 354 F.3d 877, 879 (D.C. Cir. 2004).  "For each patent, companies can
satisfy this requirement by including in their ANDAs one of several 'certifications,'" *id.*, "with
respect to each" of the Orange Book patents claimed by the brand-name drug, 21 U.S.C. §
355(j)(2)(A)(vii).  Relevant here, a generic applicant that seeks to market its ANDA product
before a listed patent expires may submit a "Paragraph IV Certification," asserting that the patent
"is invalid or will not be infringed by the manufacture, use, or sale" of the generic drug "for
which the [ANDA] is submitted."  21 U.S.C. § 255(j)(2)(A)(vii).  After a generic applicant
submits a Paragraph IV Certification in its ANDA, the applicant must provide notice to the
patent owner and holder of the approved NDA "not later than 20 days after the date" on which
the FDA "informs the [ANDA] applicant that the [ANDA] has been filed."  21 U.S.C. §
355(j)(2)(B)(ii)(I).  "Filing a [P]aragraph IV [C]ertification comes with a risk, though: it
constitutes an act of patent infringement with the hazard of sparking costly litigation."  *Teva
Pharms. USA, Inc. v. Sebelius* ("*Teva v. Sebelius*"), 595 F.3d 1303, 1305 (D.C. Cir. 2010)
(internal citation omitted) (citing 35 U.S.C. § 271(e)(2)(A)).  A patent owner filing an

infringement suit within 45 days of receiving notice of the Paragraph IV Certification generally triggers an automatic 30-month stay that bars the FDA from approving the ANDA until the stay expires. 21 U.S.C. § 355(j)(5)(B)(iii).

To "induce challenges to patents claimed to support brand drugs" and to "reward" "generics that stick out their necks (at the potential cost of a patent infringement suit) by" filing a Paragraph IV Certification, which effectively "claim[s] that patent law does not extend to the brand maker's monopoly as long as the brand maker has asserted," "Congress . . . created the 180-day exclusivity" incentive. *Teva v. Sebelius*, 595 F.3d at 1318; *see also* 21 U.S.C. § 255(j)(5)(B)(iv). Specifically, the "first applicant"— defined as "an applicant that, on the first day on which a substantially complete application containing a [Paragraph IV Certification] is submitted for approval of a drug, submits a substantially complete application that contains and lawfully maintains a [Paragraph IV Certification]," 21 U.S.C. § 355(j)(5)(B)(iv)(II)(bb)—is eligible for a "180-day exclusivity period" to market its generic drug, *id.* §§ 355(j)(5)(B)(iv)(I), (II)(aa). The statute provides for such exclusivity by directing that if a subsequent ANDA "contains a [Paragraph IV Certification] and is for a drug for which a first applicant has submitted an application containing such a certification, the [subsequent ANDA]" cannot be approved until "the date that is 180 days after the date of the first commercial marketing of the drug" "by any first applicant." *Id.* § 355(j)(5)(B)(iv)(I). This means that, when a first applicant remains eligible for the 180-day exclusivity period, the FDA must delay approval of subsequently filed ANDAs until 180 days after a first applicant begins commercial marketing of its generic drug. 21 U.S.C. § 355(j)(5)(B)(iv)(I) (delaying approval of an application that "contains a [paragraph IV certification] and is for a drug for which a first applicant has submitted . . . such a certification"); 21 C.F.R. § 314.107(c)(1) ("The ANDA of a subsequent applicant will

not be approved during the period when any first applicant is eligible for 180-day exclusivity or during the 180-day exclusivity period of a first applicant.").

"[C]ertifications are not the only way for ANDA applicants to satisfy their obligation to address all relevant patents." *Purepac*, 354 F.3d at 880. As an alternative path to asserting patent certifications, the FDCA allows generic applicants to "exclude a patented use from its label, by way of a 'section viii carveout.'" *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 327 (Fed. Cir. 2021) (citing 21 U.S.C. § 355(j)(2)(A)(viii)). In contrast to a patent Paragraph IV Certification, a section viii statement "asserts that a patent does not prevent FDA from approving the company's ANDA because the ANDA applicant seeks to market the drug for a use other than that covered by the patent." *Apotex, Inc. v. FDA*, 393 F.3d 210, 214 (D.C. Cir. 2004). This mechanism "is typically used when the brand's patent on the drug compound has expired and the brand holds patents on only some approved methods of using the drug." *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 406 (2012). "Thus," as relevant here, "whereas applicants use [P]aragraph IV [C]ertifications to challenge the validity of admittedly applicable patents, they use section viii statements to assert that patents do not apply." *Purepac*, 354 F.3d at 880. "FDA acceptance of the carve-out label allows the generic company to place its drug on the market (assuming the ANDA meets other requirements), but only for a subset of approved uses—*i.e.*, those not covered by the brand's patents." *Caraco*, 566 U.S. at 406.

Generic applicants may employ either statutory mechanism for ANDA approval—by submitting Paragraph IV Certifications on a subset of patents listed for a brand drug in the Orange Book and section viii statements to another subset. *See Purepac*, 354 F.3d at 880 ("[A]pplicants use [P]aragraph IV certifications to challenge the validity of admittedly applicable patents, they use section viii statements to assert that patents do not apply."); *id.* ("The FDA has

long required that for every patent ANDA applicants use either a [P]aragraph IV [C]ertification or a section viii statement—they may not use both" as to the same patent for the drug at issue). Recall, however, that the statute authorizes a 180-day exclusivity period only to a "first applicant" who, *inter alia*, asserts a Paragraph IV Certification.  21 U.S.C. § 355(j)(5)(B)(iv)(II)(bb) (defining first applicant).  As such, "the approval of an ANDA with 'a section viii statement," and no Paragraph IV Certification, "does not entitle a successful applicant to the 180–day period of exclusivity bestowed on [P]aragraph IV applicants.'" *Norwich Pharms., Inc. v. Becerra*, 703 F. Supp. 3d 1, 8 (D.D.C. 2023) (alteration in original) (quoting *Purepac*, 354 F.3d at 880).

In 2003, Congress passed, and the President signed, the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA"), Pub. L. No. 108-173, 117 Stat. 2066, which established, among other things, certain conditions in which a "first applicant" could forfeit its entitlement to the 180-day marketing exclusivity.  21 U.S.C. 355(j)(5)(D); *Teva v. Sebelius*, 595 F.3d at 1306 ("On the occurrence of any one of six defined scenarios, the law now says, the entitlement to a 180–day exclusivity period shall be forfeited by a first applicant." (citation and internal quotation marks omitted)).  Two such forfeiture events are relevant here: "failure to market" and "failure to receive tentative approval."

First, with respect to failure to market, the first applicant forfeits its 180-day exclusivity by failing to market the drug:

> 75 days after the date as of which, as to each of the patents with respect to which the first applicant submitted and lawfully maintained a certification qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv), at least 1 of the following has occurred:
>
> (AA) In an infringement action brought against that applicant with respect to the patent or in a declaratory judgment action brought by that applicant with respect to the patent, a court enters a final decision from which no appeal (other than a petition to the Supreme

Court for a writ of certiorari) has been or can be taken that the patent is invalid or not infringed.

(BB) In an infringement action or a declaratory judgment action described in subitem (AA), a court signs a settlement order or consent decree that enters a final judgment that includes a finding that the patent is invalid or not infringed.

(CC) The patent information submitted under subsection (b) or (c) is withdrawn by the holder of the application approved under subsection (b).

21 U.S.C. §§ 355(j)(5)(D)(i)(I)(bb), (bb)(AA)-(CC).  Second, with respect to failure to receive tentative approval, the first applicant may forfeit exclusivity by failing to "obtain tentative approval of the application within 30 months after the date on which the application is filed, unless the failure is caused by a change in or a review of the requirements for approval of the application imposed after the date on which the application is filed."  21 U.S.C. § 355(j)(5)(D)(i)(IV).

In sum, the statutory framework lays out the requirements that deem a generic manufacturer eligible for the 180-day exclusivity by qualifying as a "first applicant," *see* 21 U.S.C. §§ 355(j)(5)(D)(iv)(II)(aa), (bb), describes the circumstances under which the exclusivity provision bars approval of subsequent applicants until 180 days after a first applicant begins commercial marketing of the drug in question, *see id.* § 355(j)(5)(D)(I), and provides for defined situations where a first applicant can forfeit the 180-day exclusivity period to which it is otherwise eligible and statutorily entitled, *id.* §§ 355(j)(5)(D)(i)(I)-(VI).

### B.    Factual Background

Salix holds NDAs for 200mg and 550mg rifaximin tablets that are marketed under the brand name Xifaxan.  The 550mg strength product is approved to treat irritable bowel syndrome with diarrhea ("IBS-D indication") and heptic encephalopathy ("HE indication"), a brain disorder caused by severe liver disease.  *See* Salix Pharms. Inc., *Xifaxan Prescribing Information* §§ 1.2, 1.3 (Oct. 2023), https://perma.cc/YG3S-32TB.  The 200mg product is approved only to

treat traveler's diarrhea. *Id.* §§ 1.1, 2.1. At all times relevant to this case, FDA's Orange Book has listed multiple patents covering rifaximin. *See generally* FDA, *Patent and Exclusivity for NDA N021361*, https://www.accessdata.fda.gov/scripts/cder/ob/patent_info.cfm?Product_No=002&Appl_No=02 1361&Appl_type=N (last visited Apr. 17, 2025). Some of these patents cover rifaximin's use for HE ("HE patents"), its uses for IBS-D ("IBS-D patents"), and others cover certain forms of its active ingredient ("polymorph patents"). *Id.*

###### 1.    *Actavis First-Filed Rifaximin ANDA*

On December 18, 2015, Actavis submitted an ANDA for 550mg rifaximin tablets for both the IBS-D and HE indications. Certified Admin. Record ("AR") at 13, ECF No. 79. This application was substantially complete when submitted, containing Paragraph IV Certifications as to, at least, four polymorph patents (*i.e.,* 7,906,542 ("'542 patent"), 8,518,848 ("'848 patent"), 8,741,904 ("'904 patent"), and 8,193,196 ("'196 patent)); an IBS-D patent (*i.e.*, 8,309,569 ("'569 patent")); and four HE patents (*i.e.*, 8,829,017 ("'017 patent"), 8,946,252 ("'252 patent"), 9,969,398 ("'398 patent"), and 8,642,573 ("'573 patent")). AR at 13-14. Thus, December 18, 2015, was the first date on which such an application was submitted. AR at 13-14. Since filing its application, Actavis has lawfully maintained the same Paragraph IV Certifications. AR at 14.

After serving its Paragraph IV Certifications on Salix, Salix, in turn, sued Actavis for patent infringement in March 2016. *See* Compl., *Salix Pharms., Ltd. v. Actavis Lab'ys FL, Inc.*, No. 16-cv-00188-GMS (D. Del. Mar. 23, 2016), ECF No. 1. Two years later, in September 2018, the parties settled. Press Release, BAUSCH HEALTH, *Bausch Health Announces Resolution of XIFAXAN® Intellectual Property Litigation* (Sept. 12, 2018), https://www.ir.bauschhealth.com/news-releases/2018/09-12-2018-120152669. The settlement

agreement permits Actavis to enter the market no later than January 1, 2028, over 22 months before the last of the Salix patents expires. *Id.* In the stipulated consent judgment, Actavis admitted its ANDA product would infringe the listed patents absent a license, but without conceding patent validity, and Salix recognized that Actavis was "entitled to maintain its Paragraph IV [C]ertification[s]" to the non-expired patents. *See* Stipulated Judgment, *Salix Pharms., Ltd. v. Actavis Lab'ys FL, Inc.*, No. 16-cv-00188-GMS (D. Del. Sept. 14, 2018), ECF No. 111.

In parallel with the Salix-Actavis litigation, the FDA began reviewing Actavis' ANDA. AR at 3-5. Actavis had until June 18, 2018, to obtain tentative approval or face possible forfeiture of its 180-day exclusivity under 21 U.S.C. § 355(j)(5)(D)(i)(IV). AR at 20. At the time Actavis submitted its ANDA, FDA had published draft guidance that, if finalized, would have recommended applicants conduct "comparative dissolution testing" designed to assess the product quality of a proposed generic rather than to demonstrate its bioequivalence to Salix's reference drug. AR at 29-30 (2012 Draft Rifaximin Guidance) (recommending that applicants follow method described in FDA's dissolution methods database). █████████████

████████████████████████████████████████████████████████████

██████████████████

While Actavis' ANDA was under review, however, the agency's thinking evolved, based in part on a citizen petition submitted by Salix on October 17, 2016. *See generally* AR at 39-122. As relevant here, FDA granted the petition, in part, on March 16, 2017, to the extent that it requested the agency "recommend[] . . . [in] revised draft product-specific guidance" that it would "require in vitro dissolution testing . . . under multiple physiologically relevant pH conditions and surfactant levels." AR at 253. The FDA then published new draft rifaximin

guidance that, if finalized, would have recommended additional dissolution studies designed to help demonstrate bioequivalence. *See* AR at 210-230 (2017 Draft Product-Specific Rifaximin Guidance for Rifaximin Tablets ("2017 PSG"); *see also* AR at 252-53 (explaining that design of additional studies would "allow[] for the simulation of in vivo drug release in different portions of the [digestive] tract").

███████████████████████████████████

██████████████████████████████████

██████████████████

### 2.    Salix-Norwich I *Litigation*

In December 2019, Norwich filed two ANDAs for different strengths of rifaximin: ANDA No. 214369 ("the '369 ANDA") for the 550mg strength, and ANDA No. 214370 ("the '370 ANDA") for 200mg strength.  AR at 14-17.  Norwich's '369 ANDA sought approval for both the IBS-D and HE indications and included Paragraph IV Certifications to the certain Orange-book listed polymorph, IBS-D, and HE patents.  AR at 15-16.  Norwich's initial '370 ANDA did not make any Paragraph IV Certifications, electing instead to wait for approval for the listed patents to expire.  AR at 881.

In response to receiving notices regarding Norwich's Paragraph IV Certifications for the '369 ANDA, Salix sued Norwich for patent infringement in the District of Delaware.  AR at 520-71; *see generally Salix Pharms., Ltd. v. Norwich Pharms., Inc.* ("*Salix-Norwich I*"), Civil Action No. 20-430-RGA, 2022 WL 3225381 (D. Del. Aug. 10, 2022).  Initially, Salix asserted claims of patent infringement as to twenty-six patents, but in compliance with the scheduling order, Salix limited the number of challenged patents contested at trial to seven.  *Salix-Norwich I*, 2022 WL 3225381, at *1.  After trial, the parties filed a joint stipulation asking the court to enter a final judgment of non-infringement regarding certain, but not all, claims, limited to "Norwich's current ANDA No. 214369" and "current ANDA product," which included only "amendments or supplements to the ANDA that do not change the indications of use, the polymorph forms, or the formulation."  Proposed Stipulation at 2 n.1, *Salix-Norwich I*, ECF No. 179.  The court signed the stipulation in May 2022.  *See* Stipulation, *Salix-Norwich I*, ECF No. 180; AR at 579-83.  The

stipulation of non-infringement included eight of Salix's patents (*i.e.*, the '542 patent, '848 patent, '904 patent, '196 patent, '569 patent, '017 patent, '252 patent, and the '398 patent).  AR at 579-83.

The district court ultimately determined that the seven contested patents at trial—which were not covered by the parties' stipulation—were infringed by Norwich's '369 ANDA, but that only the claims in the HE indication '573 patent were valid.  *Salix-Norwich I*, 2022 WL 322581, at *23.  In accordance with the Hatch-Waxman Act, the court entered a judgment order that "the effective date of any final approval by the [FDA] Norwich's ANDA No. 214369 is to be a date not earlier than the date of the expiration of the last to expire" '573 HE indication patent, which is October 2, 2029.  Order ¶ 5, *Salix-Norwich I*, ECF No. 193; AR at 603.

Undeterred, Norwich moved for reconsideration, under Federal Rule of Civil Procedure 60(b), explaining that it amended the '369 ANDA to remove the HE indication found to be covered by Salix's valid patent and infringed and asked the court to "remove the absolute prohibition on FDA's approval of Norwich's Amended ANDA."  Norwich's R.60(b) Mot. at 6, *Salix-Norwich I*, ECF No. 211.  The court denied Norwich's reconsideration motion, explaining that no "changed circumstances" warranted modifying the judgment, noting further that "[t]he only changed circumstance is that [Norwich] decided to amend its ANDA, which it filed on September 6, 2022 . . ., nearly one month after the final judgment.  The changed circumstance is simply a voluntary decision of the trial loser to change course, which is neither unanticipated nor unforeseeable."  *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Civil Action No. 20-430-RGA, 2023 WL 3496373, at *1 (D. Del. May 17, 2023).  The court also rejected Norwich's equitable arguments and stated that, even though Norwich amended its ANDA, "[i]t is not a simple matter to determine whether an ANDA applicant has successfully carved out language from a label to

turn infringement into non-infringement." *Id.* at *2.  Norwich's actions amounted to an

"unprecedented" attempt to allow a defendant to "litigate a case through trial and final judgment

based on a particular ANDA, and then, after final judgment, change the ANDA to what it wishes

it had started with, and win in a summary proceeding." *Id.*

Salix and Norwich cross-appealed to the Federal Circuit.  *Salix Pharms., Ltd. v. Norwich

Pharms. Inc.*, 98 F.4th 1056 (Fed. Cir. 2024).  The Federal Circuit affirmed the district court in

all respects, *id.* at 1069-70, including denial of Norwich's Rule 60(b) motion because, among

other things, "simply asserting that a patented indication has been carved out of an ANDA

application does not necessarily satisfy the judgment or entitle the applicant to direct entry to the

market," *id.* at 1069.  The Supreme Court denied both parties' petitions for certiorari.  *Norwich

Pharms. Inc. v. Salix Pharms., Ltd.*, 145 S. Ct. 567 (2024); *Salix Pharms., Ltd. v. Norwich

Pharms. Inc.*, 2024 WL 5112288 (U.S. Dec. 16, 2024).

### 3.    *Norwich Sues FDA for Final Approval of the '369 ANDA*

On June 2, 2023, the FDA granted tentative approval of Norwich's '369 ANDA, which,

as amended, seeks approval to market 550mg rifaximin for IBS-D.  AR at 616.  Tentative

approval occurs when the FDA determines that an ANDA meets all other statutory requirements

for approval but cannot be granted final approval due to a patent or a statutory exclusivity.  21

U.S.C. § 355(j)(5)(B)(iv)(II)(dd)(AA); 21 CFR §§ 314.3, 314.105(d).  In granting only tentative

approval of the '369 ANDA, the FDA explained that "final approval cannot be granted until

October 2, 2029, as specified in the court order" in *Salix-Norwich I*.  AR at 616.

Dissatisfied with its losses at both the trial and appellate levels in the patent infringement

lawsuit in Delaware and doubly haunted with those losses by virtue of the FDA's reliance on the

judicial holdings in that case, Norwich switched courts.  Specifically, Norwich sued the FDA in

this Court, pursuant to the Administrative Procedure Act, seeking final approval of the '369 ANDA. *See generally Norwich Pharms., Inc. v. Becerra* ("*Norwich APA*"), 703 F. Supp. 3d 1 (D.D.C. 2023). Norwich's complaint in that litigation "allege[d] that the FDA's decision 'refus[ing] to grant Norwich's amended ANDA final approval[,] despite a properly-filed statement under 21 C.F.R. § 314.94(a)(12)(viii)(A) that it is not seeking FDA approval for a patented method of use' was 'arbitrary, capricious, and unlawful.'" *Norwich APA*, 703 F. Supp. 3d 1, 12. Another Judge on this Court disagreed, holding that "Norwich has failed to show that the law is so clear that the FDA should have stretched to read the Delaware District Court's final judgment and Rule 60(b) decision in a manner that ignores their plain terms." *Id.* at 25. Consequently, "[Norwich's] proposition is unsustainable, as is [its] ultimate contention that the FDA erred as a matter of reasoned-decision-making and law in reading those documents to leave the agency free to approve the company's amended ANDA prior to October 2, 2029." *Id.* Norwich has appealed the decision to the D.C. Circuit, *Norwich Pharms., Inc. v. Kennedy*, No. 23-5311 (D.C. Cir. Dec. 29, 2023), and that appeal remains pending.

### 4.    *Norwich Amends the '370 ANDA*

As part of its multi-pronged effort to get its generic 550mg of rifaximin to market for the treatment of IBS-D, and after losing the patent infringement lawsuit in Delaware and the APA challenge before a different Judge on this Court upholding the FDA's adherence to the holdings by the Delaware district court, Norwich amended its '370 ANDA on May 20, 2024, to add the 550mg dosage strength to treat IBS-D. AR at 16-17; AR at 17 n.40. Its amended '370 ANDA contains both Paragraph IV certifications and section viii statements to various Salix patents. AR at 16-17; AR at 17 n.41. As relevant here, as part of the amended '370 ANDA, Norwich submitted Paragraph IV Certifications as to Salix's polymorph and IBS-D patents, and section

viii statements regarding Salix's HE indication patents—effectively seeking to have its '370 ANDA approved for the 550mg dosage to treat IBS-D only. AR at 17. This most recent amendment to Norwich's '370 ANDA has now resulted in two separate lawsuits.

First, during the course of the *Salix-Norwich I* litigation, new patents were issued to Salix covering the 550mg tablets for treatment of IBS-D, including U.S. Patent Nos. 11,564,912 and 11,799,571. AR at 878-79. In its amended '370 ANDA, Norwich included Paragraph IV Certifications applicable to the new IBS-D patents. AR at 16-17, 878-79, 878 n.16. Norwich sent notice of its new Paragraph IV Certifications to Salix in May 2024, and Salix filed suit in the District of New Jersey under the Hatch-Waxman Act within 45 days. *Salix Pharms., Inc. v. Norwich Pharms., Inc.*, No. 24-cv-7140-JFM (D.N.J. 2024). Norwich's motion to dismiss, or, in the alternative, to transfer venue in the New Jersey litigation remains pending, with discovery set to conclude in November 2025. Order, *Salix Pharms., Inc. v. Norwich Pharms., Inc.*, 24-cv-7140-JFM (D.N.J. Apr. 1, 2024), ECF No. 66; Norwich's Mot. to Dismiss, *Salix Pharms., Inc. v. Norwich Pharms., Inc.*, 24-cv-7140-JFM (D.N.J. Apr. 10, 2024), ECF No. 67.[4]

Second, following its amendment, Norwich asked the FDA to approve its ANDA immediately with respect to 550mg rifaximin tablets to treat IBS-D. AR at 809-31. Norwich acknowledged that the FDA previously determined Actavis to be a first applicant eligible for 180-day exclusivity. AR at 812. Norwich argued, however, that its ANDA was nevertheless approvable before the 180-day exclusivity period ended because Actavis had forfeited any

---

[4]     Given that the relief requested in this lawsuit is an order directing the FDA to approve its '370 ANDA, *see* Am. Compl., Prayer for Relief ("Entry of an injunction directing FDA to grant final approval to Norwich's '370 ANDA"), the ongoing litigation in New Jersey district court to determine whether the '370 ANDA amounts to patent infringement would be highly pertinent. Nevertheless, Norwich failed to mention this ongoing patent infringement litigation. *See generally* Norwich' Mem. (not discussing Salix's ongoing patent infringement lawsuit against Norwich in New Jersey district court); Norwich's Reply (same); Amend. Compl. (same). Such a "hide-the-ball" litigation strategy is rarely successful, reflects badly on the party and counsel employing the strategy, and is never appreciated by the Court.

relevant eligibility for failure to market and/or failure to obtain tentative approval. AR at 814-31.

On January 8, 2025, the FDA issued a 21-page memorandum disagreeing with Norwich's position. AR at 8-28. The FDA first determined that Norwich's claim of forfeiture for failure to market failed because no event enumerated under 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb) had occurred as to at least one of the HE patents to which Actavis maintains a Paragraph IV Certification qualifying it for exclusivity—namely, the '573 HE indication patent that the *Salix-Norwich I* court found to be valid and infringed by Norwich. AR at 19-27. The FDA proceeded from the premise that the stipulation of non-infringement in the *Salix-Norwich I* litigation regarding the '369 ANDA could act as a qualifying event with respect to six patents which Actavis and Norwich both submitted Paragraph IV Certifications—namely, the '542, '275, '196, '569, '949, and '904 patents. AR at 20-22. Thus, the FDA did not rely on the stipulated patents in confirming whether Actavis forfeited or not because, even if the stipulation from the *Salix-Norwich I* litigation survived, the '573 patent foreclosed any finding of forfeiture. *Id.*

In making that determination, the FDA rejected Norwich's argument that its own section viii statement regarding the same patent meant that Actavis' certification was no longer a "qualifying" one, AR at 23-27, explaining that such an argument "improperly conflate[d]" distinct statutory provisions. AR at 23. In the FDA's view, Norwich is a "subsequent applicant" for rifaximin 550 mg tablets, subject to Actavis' 180-day exclusivity under the Effectiveness Provision, because Norwich's ANDA still "contains paragraph IV certifications to non-HE patents." *Id.*; *see also* AR at 25 (explaining that Actavis' and Norwich's paragraph IV certifications overlap). The only question is whether Actavis forfeited that exclusivity, but the FDA determined that Norwich's section viii statement to the '573 patent is irrelevant to

forfeiture because "[t]he failure to market forfeiture provision . . . clearly specifies that only a first applicant's certifications are relevant to the forfeiture analysis"; the statute requires a triggering event "as to each of the patents with respect to which the <u>first applicant</u> submitted and lawfully maintained" a paragraph IV certification, with "no exception for patents to which another applicant has submitted a section viii statement." AR at 24 (emphasis in original) (quoting 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)). The FDA explained that this interpretation "accords with the statutory scheme," since forfeiture clears the way for all subsequent generic applicants on a uniform basis, not just for a particular ANDA. AR at 27. The FDA also rejected Norwich's policy arguments about incentivizing patent challenges. Congress directed that a subsequent applicant could trigger a forfeiture by "clear[ing] the field" with "successful patent challenges as to <u>all</u> of the patents qualifying the first applicant for 180-day exclusivity." *Id.* (emphasis in original). Norwich, however, failed to do so as it "lost in its challenge of the '573 patent." *Id.*

The FDA also rejected Norwich's claims that Actavis had forfeited its eligibility for failure to obtain tentative approval within 30 months of filing. AR at 1-7, 17-19. The FDA determined that the change in requirements with respect to the dissolution studies needed for Actavis to show bioequivalence was a cause of Actavis' failure to obtain tentative approval within 30 months. AR at 17-19. ███████████████████

████████████████████████████████████

████████████████████████████████

Having determined that Actavis is a first applicant eligible for 180-day eligibility, and that such eligibility has not been forfeited, the FDA was required to delay final approval of Norwich's subsequent ANDA. AR at 890-95. Consequently, Norwich was granted only

tentative approval, on January 10, 2025, because Norwich had otherwise submitted "adequate information . . . to demonstrate that [its] drug meets the requirements for approval." AR at 890-95.

### C.    Procedural History

Disappointed by the FDA's grant of only tentative approval to its amended '370 ANDA, Norwich commenced the instant lawsuit against the government defendants on January 13, 2025, challenging the FDA's decision not to grant the '370 application immediate approval under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, as arbitrary, capricious, and contrary to law. *See* Amend. Compl. ¶¶ 96-10. As already noted, Actavis and Salix subsequently sought and were granted permission to intervene as defendants. *See* Minute Order (Jan. 28, 2025) (granting Actavis' motion); Minute Order (Jan. 30, 2025) (granting Salix's motion).

Several days after filing its complaint, Norwich moved for a preliminary injunction. Norwich's Mot. Preliminary Inj. at 1, ECF No. 22. At the parties' request, Norwich's motion was consolidated with the merits under Rule 65(a)(2) of the Federal Rules of Civil Procedure, "treat[ed] . . . as a motion for summary judgment," and a scheduling order for summary judgment briefing was entered. Minute Order (Jan. 28, 2025); *see also* ECF No. 8 (Proposed Joint Stipulated Scheduling Order). The issue is now ripe for consideration.

## II.    LEGAL STANDARD

The APA authorizes judicial review of any "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and "instructs a reviewing court to set aside agency action found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'" *Cigar Ass'n of Am. v. FDA*, 964 F.3d 56, 61 (D.C. Cir. 2020) (quoting 5 U.S.C. § 706(2)(A)). This standard "'requires agencies to engage in reasoned decisionmaking,' and ........ to reasonably explain to reviewing courts the bases for the actions they take and the

conclusions they reach." *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 115 (D.C. Cir. 2020) (internal citations omitted) (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.* ("*Regents*"), 591 U.S. 1, 16 (2020)). While "judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action,'" *Regents*, 591 U.S. at 20 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)), the agency, too, "must defend its actions based on the reasons it gave when it acted," *id.* at 24.

In APA cases such as this one, involving cross-motions for summary judgment, "the district judge sits as an appellate tribunal," *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)), since the "'entire case on review is a question of law,' and the 'complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action,'" *id.* (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

## III.    DISCUSSION

Norwich frames the instant challenge to the FDA's decision to grant only tentative approval to the '370 ANDA as "arbitrary, capricious, and contrary to law," Norwich's Mem. Supp. MSJ ("Norwich's Mem.") at 3, ECF No. 38, without clearly identifying which aspects of the FDA's decision, in its view, were "arbitrary and capricious" and those that are, instead, "contrary to law," despite the fact that these respective inquiries are distinct. For example, "[t]he arbitrary and capricious standard is '[h]ighly deferential,' and it 'presumes the validity of agency action.'" *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007) (quoting *AT&T Corp. v. FCC*, 349 F.3d 692, 698 (D.C. Cir. 2003)). To meet this standard, a plaintiff must show that "(1) the agency 'has relied on factors which Congress has not intended it

to consider'; (2) the agency 'entirely failed to consider an important aspect of the problem'; (3) the agency's explanation 'runs counter to the evidence before the agency'; or (4) the explanation 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 663 (D.C. Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  By contrast, "[i]n determining whether an agency's interpretation of its governing statute is contrary to law, [courts] must exercise [their] 'independent judgment' and 'apply[] all relevant interpretive tools' to reach 'the best reading of the statute.'" *Env't Def. Fund v. EPA*, 124 F.4th 1, 11 (D.C. Cir. 2024) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 412 (2024)); *Norwich APA*, 703 F. Supp. 3d at 19 (describing the different inquiries into whether an agency's decision is "arbitrary and capricious" or "contrary to law").  Here, the main thrust of Norwich's attack on the FDA's January 8, 2025, decision that Actavis had not forfeited exclusivity—from which followed the January 10, 2025, tentative approval only of Norwich's '370 ANDA—is predicated on the argument that the FDA's action is "contrary to law" because the agency did not "act[] consistently with the 'best reading' of the statute," *Vanda Pharms., Inc. v. FDA*, 123 F.4th 513, 521 (quoting *Loper Bright*, 609 U.S. at 400), and is analyzed as such. *See* Norwich's Reply at 1 (arguing that the FDA's decision was "contrary to law" without any mention that the decision was allegedly arbitrary and capricious).

   To determine if an agency acted consistently with the statute, a court must "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright*, 609 U.S. at 394.  In addition to deploying all "traditional tools of statutory construction," *id.* at 403, "[a]s the Court reiterated in *Loper Bright*, 'courts may—as they have from the start—[also] seek aid from the interpretations of those responsible for implementing particular statutes,'" *Lissack v.*

*Comm'r of Internal Revenue*, 125 F.4th 245, 259 (D.C. Cir. 2025) (quoting *Loper Bright*, 609 U.S. at 394).

The parties agree that: (1) Actavis is a "first applicant" eligible for the 180-day exclusivity of its drug because it was the first generic manufacturer to file a substantially complete application that contained at least one Paragraph IV Certification and lawfully maintains a Paragraph IV Certification for the drug; (2) the 180-day exclusivity effectiveness provision bars Norwich's '370 ANDA unless a forfeiture event with respect to Actavis has occurred. Norwich's Mem. at 1-3; Norwich's Reply at 1-2; Gov't's Opp'n at 1, 15; Teva's Opp'n at 16-18; Salix's Mem. Supp. XMSJ ("Salix's Opp'n") at 8-9, ECF No. 66. The only dispute is whether the FDA erred in finding that Actavis has not forfeited its 180-day marketing exclusivity. Norwich argues that Actavis has forfeited its 180-day exclusivity by failing to market and failing to obtain tentative approval. Norwich's Mem. at 1-3. Contrary to the, at times, convoluted arguments put forward by Norwich, the FDA's decision comports with the clear text and structure of the statute.

### A.  Failure to Market

All tools of statutory interpretation point, like a compass, in one direction: Actavis has not forfeited its 180-day exclusivity under the failure-to-market provision.

### 1.  *The Text*

Statutory interpretation "begins, as always, with the text of the statute." *Chao v. Day*, 436 F.3d 234, 235 (D.C. Cir. 2006) (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)). If the text of the statute is "plain and ambiguous," the "analysis ends with the text as well." *Id.* (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)); *see also Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) ("Because the plain language [statute] is 'unambiguous,' 'our inquiry begins with the statutory text, and ends there as well.'" (quoting

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion)); *United States v. Villanueva-Sotelo*, 515 F.3d 1234, 1237 (D.C. Cir. 2008) ("We must first 'determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' If it does, our inquiry ends and we apply the statute's plain language." (internal citation omitted) (quoting *Robinson*, 519 U.S. at 340 and citing *Barnhart*, 534 U.S. at 450)).

The plain text states that the "180-day exclusivity period . . . shall be forfeited by a first applicant" 21 U.S.C. § 355(j)(5)(D)(ii), if "[t]he first applicant fails to market the drug by the later of"

> with respect to the first applicant . . ., the date that is 75 days after the date as of which, as to each of the patents with respect to which the first applicant submitted and lawfully maintained a certification qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv),

as relevant here, "[i]n an infringement action or declaratory judgment action . . . , a court signs a settlement order or consent decree that enters a final judgment that includes a finding that the patent is invalid or not infringed." 21 U.S.C. §§ 355(j)(5)(D)(i)(I)(bb), (bb)(BB).

The parties primarily dispute which patent certifications qualify Actavis for the 180-day exclusivity period. Norwich's Reply at 4-11; Gov't's Reply Supp. XMSJ ("Gov't's Reply") at 1-8, ECF No. 59; Salix's Reply Supp. XMSJ ("Salix's Reply") at 2-5, ECF No. 70; Teva's Reply Supp. XMSJ ("Teva's Reply") at 4-13, ECF No. 73. The FDA and Norwich proceed from the premise that the stipulation of non-infringement between Norwich and Salix in the *Salix-Norwich I* litigation leaves only the '573 patent that Actavis submitted a Paragraph IV Certification without a forfeiture event under 21 U.S.C. §§ 355(j)(5)(D)(i)(I)(bb). Gov't's Opp'n at 18; Norwich's Mem. at 19. [5] From there, Norwich reads subparagraph (B)(iv)(I) as requiring

---

[5]    The intervenor defendants insist that the FDA should not have made this assumption. Salix's Opp'n at 18-21; Teva's Opp'n at 31-32. In their view, Norwich's amended '369 ANDA invalidated any effect of

matching patent Paragraph IV Certifications between a first applicant's ANDA and a subsequent applicant's ANDA to prevent a first applicant from forfeiting its 180-day exclusivity. Norwich's Mem. at 22-24. In Norwich's view, its submission of a viii statement, and not a Paragraph IV Certification, for the '573 patent to market 550mg tablets of rifaximin for IBS-D means that Actavis has forfeited its 180-day exclusivity to market 550mg tablets of rifaximin for IBS-D and HE, for which Actavis lawfully maintains a Paragraph IV Certification to the '573 HE indication patent. Norwich's Reply at 1. This is referred to as a "patent-by-patent approach" to exclusivity because the proffered exclusivity turns on the patents to which both a first applicant and a subsequent applicant have asserted Paragraph IV Certifications. Norwich Reply at 5, 13-14. The government and intervenor defendants disagree. In their view, the forfeiture provision speaks only to the "first applicant's" Paragraph IV Certifications. Gov't's Reply at 3-8; Teva's Reply at 5-8; Salix's Reply at 2-5. Thus, under subparagraph (B)(iv)(II), the qualifying certifications are any of the Paragraph IV Certifications Actavis submitted and lawfully maintains, including its Paragraph IV Certification for the '573 patent, which has not experienced a forfeiture event. Gov't's Reply at 3-8; Teva's Reply at 5-8; Salix's Reply at 2-5. This is referred to as the "drug-product approach" to exclusivity because the exclusivity turns on the drug product—here, the 550mg tablets of rifaximin.

The text forecloses Norwich's position because "[w]ords are to be given the meaning that proper grammar and usage would assign them." *Nielsen v. Preap*, 586 U.S. 392, 407-08 (2019) (alteration in original) (quoting A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 140 (2012)). To trigger forfeiture, the statute requires a "forfeiture event" as to "each of the patents" the first applicant submitted and lawfully maintains "a certification

---

the stipulation. Salix's Opp'n at 18-21; Teva's Opp'n at 31-32. Like the FDA, however, this issue is not reached because the effect, or lack thereof, of the stipulation would not change the outcome of the analysis here.

qualifying the first applicant for the 180-day exclusivity period under [21 U.S.C. §
355(j)(5)(B)(iv)]." 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb).  By its plain terms, a forfeiture event must
occur as to each patent a first applicant has submitted and lawfully maintains a certification
*qualifying* it for the 180-day exclusivity period under subparagraph (B)(iv).  "[W]here a statute's
terms are undefined, our interpretation is guided by the terms' 'regular usage.'"  *Bd. of Cnty.
Comm'rs v. Fed. Housing Fin. Agency*, 754 F.3d 1025, 1028-29 (D.C. Cir. 2014) (quoting *Lopez
v. Gonzales*, 549 U.S. 47, 53 (2006)).  In this context, to "qualify," means "possess[ing] . . .
qualities or properties . . . legally necessary to make . . . [a first applicant] eligible" for the 180-
day exclusivity period.  *Qualification*, BLACK'S LAW DICTIONARY (7th ed. 1999); *see also
Qualified*, BLACK'S LAW DICTIONARY (7th ed. 1999) ("Possessing the necessary qualifications");
*Quality*, BLACK'S LAW DICTIONARY (7th ed. 1999) ("The particular character or properties of a
person, thing, or act, often essential for a particular result"); *Qualified*, WEBSTER'S THIRD NEW
INT'L DICTIONARY (2002) ("[H]aving complied with the specific requirements or precedent
conditions").  In turn, to identify what qualities are legally necessary to make a first applicant
eligible for the 180-day exclusivity, the statute cross-references to subparagraph (B)(iv).

Subparagraph (B)(iv) has two subsections.  The first subsection provides for the
"effect[]" a first applicant's ANDA will have on the marketing date of subsequent applicants and
says nothing as to whether a first applicant possesses the properties legally necessary to be
eligible for the 180-day marketing exclusivity.  *Id.* § 355(j)(5)(B)(iv)(I) ("Subject to [a forfeiture
event in subparagraph (D)), if the [ANDA] contains a [Paragraph IV Certification] and is for a
drug for which a first applicant has submitted an application containing such a certification, the
application shall be made effective on the date that is 180 days after the date of the first
commercial marketing of the drug . . . by any first applicant.").  On the other hand, the second

subsection, defines "first applicant" and "180-day exclusivity period," *id.* § 355(j)(5)(B)(iv)(II), identifying the precedent conditions a first applicant must meet to become eligible for the 180-day exclusivity period.  To be eligible for the "180-day exclusivity period," an applicant must be a "first applicant."  *Id.* § 355(j)(5)(B)(iv)(II)(aa).  A "first applicant," is an applicant that (1) "submits a substantially complete application" (2) "that contains and lawfully maintain[s] a [Paragraph IV Certification] for the drug" (3) "on the first day" that such an application is filed. *Id.* § 355(j)(5)(B)(iv)(II)(bb).  The "indefinite article[] 'a' . . . [is] used when 'referring to something not specifically identified . . . but [instead] treated as one of a class: one, some, any.'" *Citizens for Resp. & Ethics in Wash. v. FEC*, 971 F.3d 340, 354-345 (D.C. Cir. 2020).  Thus, "a certification qualifying the first applicant for the 180-day exclusivity period," 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb), is any Paragraph IV Certification for the drug.  Therefore, no forfeiture for failure to market has happened because all of the Paragraph IV Certifications Actavis has made with respect to listed Orange Book patents covering 550mg tablets of rifaximin qualify it for the 180-day exclusivity.  Consequently, for 550mg tablets of rifaximin (the drug), Actavis' Paragraph IV Certification for the '573 patent (the HE indication patent) qualified it as a first applicant, which has not been subject to a forfeiture event.

Norwich resists this natural reading of the statute and argues that whether a certification qualifies the first applicant to the 180-day exclusivity period rests on subparagraph (B)(iv)'s first subsection, 21 U.S.C. § 355(j)(5)(B)(iv)(I), which describes the applicability and effect of the 180-day exclusivity period on applicants other than a first applicant.  Norwich's Reply at 5-18. As already discussed, however, (B)(iv)'s first subsection (I) neither defines, nor describes the criteria for qualifying as, a first applicant eligible for the 180-day exclusivity period.  Instead, recall that (B)(iv)'s first subsection (I) merely reads that, subject to a forfeiture event, "if the

[ANDA] contains a [Paragraph IV Certification] and is for a drug for which a first applicant has submitted an [ANDA] containing such a certification, the application shall be made effective" after expiration of the 180-day exclusivity period. 21 U.S.C. § 355(j)(5)(B)(iv)(I). Whether a first applicant's ANDA bars subsequent ANDAs reveals nothing regarding what *qualifies* a first applicant for the 180-day exclusivity because blocking a subsequent applicant is not a "precedent condition" or "necessary" for a first applicant to qualify for the 180-day exclusivity period. 21 U.S.C. § 355(j)(5)(B)(iv)(II)(aa) (defining "180-day exclusivity period" as the period that precedes "the date on which [a subsequent ANDA] *could* become effective under this clause" (emphasis added)). Put another way, a first applicant need not bar subsequent applicants from marketing to qualify for the 180-day exclusivity, *id.*; "[a]ll that is required for the first Paragraph IV ANDA filer to receive the 180–day exclusivity period is that it submits a substantially complete ANDA that contains a Paragraph IV Certification." *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1356 (Fed. Cir. 2008) (citing 21 U.S.C. § 355(j)(5)(B)(iv)(II)(bb)).[6]

---

[6]     Even if subparagraph B(iv)(I) were read, somehow, to factor into the qualifications a first applicant must have to be eligible for the 180-day exclusivity, that reading would not rescue Norwich. Norwich reads the language "such a certification" to mean that a "qualifying" certification for purposes of Actavis' general eligibility for, and forfeiture of, exclusivity must "match" Norwich's Paragraph IV Certifications. Norwich's Mem. at 22-25. In its view, to qualify for the "180-day exclusivity," that can be forfeited under 21 U.S.C. § 355(j)(5)(D), an applicant must both be a first applicant *and* the phrase "such a certification" means that a subsequent ANDA's Paragraph IV Certifications must match the first applicant's Paragraph IV Certifications. The phrase "such a certification" means no such thing. "The term 'such,' when used as an adjective, is an inclusive term, showing that the word it modifies is part of a larger group . . . . and . . . nearly always operates as a reference back to something previously discussed." *Takeda Pharms., USA, Inc. v. Burwell*, 78 F. Supp. 3d 65, 99 (D.D.C. 2015) (Jackson, A.) (internal citations omitted), *affirmed in part and vacated in part as moot by Takeda Pharms., USA, Inc. v. Burwell*, 691 F. App'x 634 (D.C. Cir. 2016) (per curiam); *see also Such*, BLACK'S LAW DICTIONARY 1446 (7th ed. 1999) (defining "such" as "[o]f this or that kind," or "[t]hat or those; having just been mentioned"); *Such*, AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1285 (New College ed. 1976) (defining "such" as "[b]eing the same as that which has been last mentioned or implied"); *Nieves v. United States*, 160 F.2d 11, 12 (D.C. Cir. 1947) ("The word 'such' is restrictive in its effect and obviously relates to an antecedent."). In Section 21 U.S.C. § 355(j)(5)(B)(vi)(I), what was "previously discussed" is "a [Paragraph IV Certification]." The antecedent referenced is a type of certification, *i.e.*, a Paragraph IV Certification and not a specific patent to which a subsequent applicant certified. Reinforcing this conclusion, the statute uses the indefinite article "a," 21 U.S.C. § 355(j)(5)(B)(iv)(I), which, as already discussed, describes "some undetermined or unspecified particular," rather than something "specific and distinct." *United States v. Raymond*, No. 21-cr-380 (CKK), 2023 WL 7005345, at *2 (D.D.C. Oct. 24, 2023); *Citizens for Resp. & Ethics in Wash. v. FEC*, 316 F. Supp. 3d 349, 390 (D.D.C. 2018) ("In short, 'an independent expenditure' means . . . an unspecified one."). The phrase "such a certification" is thus most naturally

2.    *The Structure*

While the text alone requires rejection of Norwich's arguments, at least two aspects of the structure of the statute reinforce the conclusion the text mandates.  "Courts 'must read the words Congress enacted in their context and with a view to their place in the overall statutory scheme.'"  *United States v. Little*, 78 F.4th 453, 458 (D.C. Cir. 2023) (quoting *Turkiye Halk Bakasi v. United States*, 598 U.S. 264, 275 (2023)).  First, Norwich's insistence that consideration of a subsequent applicant's certifications is necessary in determining whether a first applicant has forfeited the exclusivity, Norwich's Reply at 8 (interpreting subparagraph (b)(iv)(I) as mandating that a "first-applicant status is necessary but not sufficient condition for effectuation of 180-day exclusivity vis-à-vis a subsequent application"), ignores the fact that forfeiture events can occur without any subsequent applicant asserting Paragraph IV Certification*s*, *see, e.g.*, 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA) (first applicant forfeits exclusivity if it fails to market within 75 days of a court's final decision of invalidity or non-infringement in an action brough against the first applicant); *id*. § 355(j)(5)(D)(ii) (describing a forfeiture event when a first applicant withdraws its ANDA).  Second, Norwich's position would have the unwieldy result of creating multiple exclusivity periods because a first applicant forfeits exclusivity, not to the drug product (550mg rifaximin tablets), but only to particular patents ('573 patent for HE indication)—*i.e.*, those patents for which a first applicant and subsequent ANDA match Paragraph IV Certifications.  Norwich's Reply at 15 (acknowledging that its position results in "multiple exclusivity periods).  The statute, however, uses "a definite article with a

---

read to encompass any Paragraph IV Certification for the relevant drug—not just a Paragraph IV Certification for one specific and distinct patent.  *Cf. Teva Pharm. Indus. Ltd. v. Crawford*, 410 F.3d 51, 53 (D.C. Cir. 2005) (noting that this statutory provision "grants 'exclusivity' to the first to file an ANDA containing a paragraph IV certification by delaying the effective date upon which the FDA may approve any subsequent ANDA containing a paragraph IV certification with respect to the same drug").

singular noun," *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021), when it describes "the" 180-day exclusivity period, *see, e.g.*, 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb) ("*the* 180-day exclusivity period under subparagraph (B)(iv)" (emphasis added)), *id.* § 355(j)(5)(B)(iv)(II)(aa) ("The term '180-day exclusivity period' means *the* 180-day period . . . ." (emphasis added)).  The use of "a definite article with a singular noun ('the notice')" implies "a discrete thing." *Niz-Chavez*, 593 U.S. at 166.  Accordingly, the presence of a discrete 180-day exclusivity period reinforces that only a first applicant's Paragraph IV Certifications are material in determining forfeiture because "*the* 180-day exclusivity period" forecloses indefinite exclusivity periods based only on "matching" patent certifications between a first applicant and subsequent applicant's applications.  *See U.S. Sugar Corp. v. EPA*, 113 F.4th 984, 993 (D.C. Cir. 2024) ("Congress's choice between a definite and indefinite article matters when determining statutory meaning."); *Del. Dep't of Nat. Res. & Env't Control v. EPA*, 895 F.3d 90, 99 (D.C. Cir. 2018) ("It is 'well established' that 'the' . . . acts as a 'word of limitation.'" (quoting *Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000))). [7]  Thus, read as a whole, "[t]he structure of the relevant statutory provisions reinforces [the] conclusion" commanded by the text.  *Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 597 U.S. 424, 442 (2022).

---

[7]    To bolster the contention that the phrase "such a certification" in 21 U.S.C. 355 § (j)(5)(B)(iv)(I), matters, Norwich points to the prefatory text in 21 U.SC. § 355(j)(5)(B) ("The approval of an application submitted under paragraph (2) shall be made effective on the last applicable date determined by applying the following to each certification made under paragraph (2)(A)(vii)"), which governs when the FDA may approve an ANDA based on its patent certifications.  According to Norwich, this prefatory text "conclusively rebuts" the government and intervenor defendants' position that the MMA rejects multiple exclusivity periods.  Norwich's Reply at 15.  Not so.  Norwich consistently conflates different statutory provisions to confuse the issue.  The prefatory text in 21 U.S.C. § 355(j)(5)(B) relied upon by Norwich simply describes the process involving ANDA certifications generally and does not speak to a first applicant qualifying for the exclusivity period, the effect of a first applicant's ANDA on subsequent applicants, or the events resulting in a first applicant forfeiting an exclusivity period.

### 3.    *Legislative History*

Norwich's misplaced insistence that subparagraph B(iv)(I) provides the necessary qualifications for a first applicant to qualify for exclusivity, Norwich's Mem. at 18-31, Norwich's Reply at 2-24, readily comes into focus in one sentence in its reply brief: "[t]he important context for this dispute is that approval of Norwich's '370 ANDA would not have been blocked by Actavis' 180-day exclusivity prior to the MMA."  Norwich's Reply at 2. Reliance on a pre-MMA statute in a post-MMA world is a giant cautionary red flag as to the fundamental flaw in Norwich's position(s) in this lawsuit.

Prior to the MMA, the FDA evaluated the 180-day exclusivity "on a patent-by-patent basis," the approach Norwich pushes here, by interpreting the phrase "such a certification" present in the then-statutory language and structure in effect as requiring matching patent Paragraph IV Certifications between ANDAs.  Final Rule, Abbreviated New Drug Applications and 505(b)(2) Applications ("Final Rule"), 81 Fed. Reg. 69580, 69600 (Oct. 6, 2016) (describing the FDA's pre-MMA agency practice and interpretation of phrase "such a certification"); *see TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69, 73 n.2 (D.D.C. 2003) ("By regulation, the FDA . . . clarified that the exclusivity provision delays the approval only of later-submitted ANDAs containing a paragraph IV certification to *the same patent* to which a previous applicant has already offered such a certification."  (emphasis in original)).  Any weight that prior interpretation may have had, though, has evaporated because the FDA's interpretation was "superseded by [statute]," specifically the MMA.  Final Rule, 81 Fed. Reg. 69580, 69628.[8]

---

[8]       Even prior to the MMA, courts were split as to the FDA's then interpretation of the phrase "such a certification."  *See Torpharm, Inc. v. FDA*, No. 03-cv-2401 (RWR), 2004 WL 64064, at *1 (D.D.C. Jan. 8, 2004) (finding FDA's interpretation of "such a certification" as authorizing a patent-by-patent approach, which resulted in shared 180-day exclusivity periods, as "contrary to the plain language" of the statute); *Apotex Inc. v. FDA*, 414 F. Supp. 2d 61, 68-69 (D.D.C. 2006) (collecting cases describing a split in cases regarding FDA's interpretation of "such a certification").  While "attempting to decipher the intent of a previous Congress is a difficult and delicate exercise, with little certainty and a generous margin for error," "the MMA may be the product of Congress'

Norwich argues that because the pre and post MMA statute retained the phrase "such a certification" in 21 U.S.C. § 355(j)(5)(B)(iv)(I), *compare id.*, *with* 21 U.S.C. § 355(j)(5)(B)(iv) (Dec. 3, 2023), Congress "ratified" the FDA's then-interpretation of the phrase.  Norwich's Reply at 12.  Far from being "re-enacted . . . without change," *Lorillard v. Pons*, 434 U.S. 575, 580 (1978), as Norwich maintains, Norwich's Reply at 12 (citing *Lorillard*, 434 U.S. at 580), the amended statute introduced "critical new term[s]" to the statute, *Teva v. Sebelius*, 595 F.3d at 1306, including the "forfeiture events," 21 U.S.C. § 355(j)(5)(D), and defining "first applicant," 21 U.S.C. § 355(j)(5)(B)(iv)(II)(bb)—two provisions Norwich vigorously tries to explain away, *see* Norwich's Mem. at 22 ("The central issue of statutory interpretation before this Court is whether the . . . language 'such a certification' . . . means *any* Paragraph IV certification in the first application."  (emphasis in original)).  Indeed, the MMA even amended subparagraph (B)(iv) by including the newly defined term "first applicant" in the provision describing the effect a first applicant's ANDA would have on subsequent applications.  21 U.S.C. § 355(j)(5)(B)(iv)(I); *compare id.*, *with* 21 U.S.C. § 355(j)(5)(B)(iv) (Dec. 3, 2023).

In contrast to Norwich, defendant and defendant-intervenors urge that the MMA be given full effect, Gov't's Opp'n at 7, Teva's Opp'n at 25, 29-30, Salix's Opp'n at 15-17, and the "first applicant" definition be correctly read to ensure that "exclusivity would be product-by-product rather than patent-by-patent," Erika King Lietzan, *A Brief History of 180-Day Exclusivity Under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act* ("*A Brief History*"), 59 FOOD & DRUG L.J. 287, 310 (2004).  Indeed, the "new language" in the MMA, including the interrelated definitions of "180-day exclusivity period" and "first applicant,"

---

realization that the FDA had incorrectly interpreted Hatch–Waxman, and may evidence congressional desire to bring the FDA's administration of the law into conformity with the drug-product interpretation originally intended." *Apotex*, 414 F. Supp. 2d at 73 n.6.

reflected that "Congress established one 180-day exclusivity period per . . . product," David E. Korn, Erika Lietzan, & Shaw W. Scott, *A New History and Discussion of 180-Day Exclusivity*, 64 Food & Drug L.J. 334, 345 (2009), and "intended to limit exclusivity to the first to challenge any patent claiming a drug," Lietzan, *A Brief History* at 310. *See also* 149 Cong. Rec. 31,783 (2003) (statement of Sen. Kennedy) (noting that in the MMA Congress intended to grant "product-by-product exclusivity rather than a patent-by-patent exclusivity"). In sum, to the extent legislative history may shed light on otherwise clear text, the history of the MMA does so by undercutting Norwich's position. *See Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011) ("Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it.").[9]

### 4. *Policy And Equities*

As a final point, the parties trade barbs over whether their preferred statutory interpretations promote fairness or the best public policy, but delving into these pros and cons of the differing policy impacts of the parties' positions has no place here. *See* Norwich's Mem. at 1-3, 28-30; Gov't's Opp'n at 22-24; Teva's Opp'n at 28-29; Salix's Opp'n at 1-2, 17-18. In passing the FDCA, the Hatch-Waxman Amendments, and the MMA "Congress struck a balance between two competing policy interests: (1) inducing pioneering research and development of new drugs and (2) enabling competitors to bring low-cost, generic copies of those drugs to market." *Andrx Pharms., Inc. v. Biovail Corp.*, 276 F.3d 1368, 1370-71 (Fed. Cir. 2002). Calibrating this balance is the job of the legislative branch and counsels careful adherence to the statutory text by the judicial branch. *See Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 465 (2015)

---

[9]    Norwich argues that the FDA changed its interpretation of "such a certification" "incorrectly and without justification," Norwich's Mem. at 19, but without describing how this change was arbitrary and capricious, *see generally id.* Accordingly, this aspect of Norwich's argument is construed as an additional argument to support its position that the FDA's Final Decision is contrary to law.

("As we have noted, Congress legislates actively with respect to patents ......... In adhering to our precedent ....., we promote the rule-of-law values to which courts must attend while leaving matters of public policy to Congress."); *Teva v. Sebelius*, 595 F.3d at 1318 ("The statute's grant of a 180-day delay in multiple generic competition for the first successful paragraph IV filer is a pro-consumer device. And it happens to be precisely the device Congress has chosen to induce challenges to patents claimed to support brand drugs."). As the Supreme Court has instructed, courts should give effect to the "best reading" of the statute's language "to effectuate the will of Congress," *Loper Bright*, 603 U.S. at 396, and "[w]here, as here, 'the language of a provision . . . is sufficiently clear in its context, ......'[there is no occasion] to examine the additional considerations of 'policy'......that may have influenced the lawmakers in their formulation of the statute.'" *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987) (quoting *Aaron v. SEC,* 446 U.S. 680, 695, 100 (1980)).

***

All tools of statutory interpretation lead to the conclusion that the FDA's decision of granting Norwich's '370 ANDA tentative approval because Actavis has not forfeited its exclusivity rights for allegedly failing to market is not contrary to law.

### B.    Failure to Obtain Tentative Approval

Failing to show that Actavis has forfeited its exclusivity for failure to market, Norwich next argues that this exclusivity is forfeited for failure to obtain tentative approval. Norwich's Mem. at 31-40. Recall that an applicant need not obtain tentative approval to be bestowed the title of first applicant. The statute, instead, provides that a first applicant may forfeit its exclusivity by failing to "obtain tentative approval of the application within 30 months after the date on which the application is filed, unless the failure is caused by a change in or a review of the requirements for approval of the application imposed after the date on which the application

is filed." 21 U.S.C. § 355(j)(5)(D)(i)(IV).  All parties agree that Actavis failed to obtain tentative

approval of its ANDA "within 30 months" after filing its ANDA.  Norwich's Reply at 24;

Gov't's Reply at 8; Teva's Reply at 16; Salix's Reply at 16.  The parties dispute, first, whether

this statutory text, in 21 U.S.C. § 355(j)(5)(D)(i)(IV), either tolls or sets aside the 30-month

deadline for obtaining tentative approval, and, second, whether the phrase "caused by," in this

statutory text demands "but-for" causation.  *See* Norwich's Reply at 24-26; Gov't's Reply at 8-

13; Teva's Reply at 17-25; Salix's Reply at 12-16.[10]  After a brief recounting of the relevant

facts, these two disputed issues are addressed *seriatim*.

Actavis filed its ANDA on December 18, 2015, but the FDA did not grant tentative

approval within 30 months, on or before June 18, 2018.  AR at 7, 20, 312-31.



The FDA's guidance, however, changed after

Salix filed a citizen petition, AR at 39-122, resulting in new guidance, reflected in the 2017 PSG,

recommending additional dissolution studies to demonstrate bioequivalence, AR at 210-30.

---

[10]    Norwich also argues that the FDA erred by declining to apply the extension rule in 21 U.S.C. 355(q)(1)(G) for delay caused by a citizen petition, which, if adopted, would have extended the deadline for Actavis to receive tentative approval only until November 15, 2018.  Norwich's Reply at 28-32.  Norwich has waived this argument.  Before the FDA, Norwich stated that "there was never any delay 'because of' [Salix's] petition," AR at 819, 591, and the FDA "agree[d]" with Norwich, finding "no evidence in the records that FDA's consideration of the 2016 petition caused a delay in approval or tentative approval of Actavis' ANDA," AR at 19.  Norwich insists it did not waive this challenge even though the FDA did not have an occasion to weigh it because the confidential information in the administrative record was unavailable prior to instituting suit.  Norwich's Reply at 31-32. Norwich, though, does not explain how any of the publicly available information available to it prior to this litigation was not enough for it to make the argument it makes now.  *See id.*  Additionally, Norwich argues that it presented its current argument "in the alternative."  Norwich's Reply at 31.  A review of the record, however, does not support Norwich's characterization as it never argued that the FDA should have found Salix's petition to induce a delay.  As such, Norwich did not "give the FDA an opportunity to consider the merits of its argument[]," and it is waived.  *Veloxis Pharms., Inc. v. FDA*, 109 F. Supp. 3d 104, 123-24 (D.D.C. 2014).

████████████████████████████████████

███████████████████████████████████████

██████████████████████████

### 1. *Tolling or Exception*

Norwich argues "[i]f a change in approval requirements occurred after the application's filing date but 'within 30 months' and caused the failure to obtain approval, the exception extends the 30-month deadline," Norwich's Reply at 26, and suggests that the statute requires "toll[ing]" of the 30-month deadline, Norwich's Mem. at 3.  Norwich's position is riddled with problems.  As an initial matter, it finds no grounding in the text.  The provision provides for forfeiture if a first applicant's ANDA is not approved "within 30 months . . . *unless* the failure is caused by a change in or a review of the requirements for approval of the application imposed after the date on which the application is filed."  21 U.S.C. § 355(j)(5)(D)(i)(IV).  "Unless" means "under any other circumstance than that" which precedes it.  *Unless*, WEBSTER'S THIRD NEW INT'L DICTIONARY 2503 (2002); *id.* (defining "unless" also as "except on the condition that").  Contrary to being "silent and ambiguous" as Norwich argues, Norwich's Reply at 26, the statute forecloses tolling of the deadline because the statute's use of "unless" presents a binary inquiry and the latter provision lacks any language extending the deadline.

Second, a survey of the statute confirms that Congress' decision to omit such language was intentional.  Specifically, Congress drafted other provisions in the statute to "toll" or "extend" the 30-month deadline.  For example, Section 355(q)(1)(G) explicitly provides that when the 30-month period is delayed as a result of a citizen petition, the deadline is "extended by a period of time equal to the period beginning on the date on which the Secretary received the petition and ending on the date of final agency action on the petition."  21 U.S.C. § 355(q)(1)(G).

36

"[H]ad Congress intended" to toll the deadline in 21 U.S.C. 355(j)(5)(D)(i)(IV) "it would have said so," just as it did in Section 355(q)(1)(G). *State Farm Fire & Cas. Co. v. U.S. ex rel. Rigsby*, 580 U.S. 26, 34 (2016); *see also Barnhart*, 534 U.S. at 452 ("[I]t is a general principle of statutory construction that when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

Third, unlike the specific guidance Congress provided in how the 30-month deadline is tolled in 21 U.S.C. § 355(q)(1)(G), no such guidance exists as to the calculation of a tolling period in 21 U.S.C. 355(j)(5)(D)(i)(IV), despite, as Norwich acknowledges, such calculations in how the 30-month deadline should be tolled "can vary dramatically in degree and scope," Norwich's Reply at 27. "Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).[11]  The FDA did not act contrary to law in coming to the same conclusion that 21 U.S.C. 355(j)(5)(D)(i)(IV) provides an exception—not a tolling provision—and if that exception applies, the first applicant's 30-month deadline for tentative approval is set aside, not merely tolled until a later date.

---

[11]     Ignoring this jurisprudential backdrop, Norwich relies on a single, unpublished, non-binding Magistrate Judge report and recommendation adopted by a district judge, *see Meijer, Inc. v. Ranbaxy Inc.*, 245 F. Supp. 3d 312, 312 (D.D.C. 2017), in an antitrust case accepting the argument about this same statutory text urged by Norwich here.  Norwich's Reply at 27 (citing *Meijer, Inc. v. Ranbaxy, Inc.*, No. 15-cv-11828-NMG, 2016 WL 4697331, at *21 (D. Mass. June 16, 2016).  No court has adopted the reasoning in *Meijer*, and the reasoning relies, not on tools of statutory interpretation, but on the ground that a contrary reading would "ignore . . . Congressional intent," *Meijer*, 2016 WL 4697331, at *21, which this Court concludes may not control over clear statutory text, *see supra* Part III.A.4.  For the reasons provided, the statute's text and structure compel the conclusion reached here, contrary to *Meijer*'s holding.  Norwich's complaints that tolling must be applied to prevent Actavis from "parking its ANDA" and thereby abusing the 180-day exclusivity, Norwich's Reply at 16-17, 27, are belied by its simultaneous concessions or lack of argument that Actavis submitted a substantially complete application on December 18, 2015, and has been actively pursuing approval of its ANDA for almost a decade, reflecting a significant investment of time and resources.

2.    *Causation*

Norwich argues that 21 U.S.C. § 355(j)(5)(D)(i)(IV) requires but-for causation, Norwich's Mem. at 32, with the consequence that an applicant must obtain approval of its application within 30 months but for a change in, or a review of, the requirements for approval of the application imposed after the date on which the application is filed, and any other deficiencies in Actavis' ANDA may be examined as independently sufficient to preclude approval by the 30-month date. *Id.* at 32-38. Thus, in its view, Actavis' failure to obtain tentative approval within 30 months was not "caused by" the 2017 PSG, but, instead, to the 2017 PSG requiring specific dissolution studies ████████████████████████████████

███████. Norwich's Reply at 32. If Norwich is correct, then Actavis forfeited exclusivity because the 2017 PSG was not the "but for" reason Actavis failed to obtain tentative approval within 30 months as other deficiencies were identified in Actavis' ANDA submitted on December 18, 2015. *Id.* at 34. In contrast, the government defendants argue that the FDA's longstanding interpretation of the phrase "caused by," in 21 U.S.C. § 355(j)(5)(D)(i)(IV), as not requiring but-for causation, is consistent with the statute's text. Gov't's Opp'n at 29. The FDA's interpretation of "caused by" is "[i]f one of the causes of failure to get tentative approval . . . was a change in or review of the requirements for approval imposed after the application was filed, an applicant will not forfeit eligibility even if there were other causes for failure to obtain tentative approval." *Mylan Labs.*, 910 F. Supp. 2d at 302 (quoting the FDA's interpretation of "caused by"); *see also* AR 410 (same). While a court may not "defer[] to the [agency's] interpretation of the statute," and instead apply "what [it] regard[s] as the statute's 'best' reading," *Sugar Corp.*, 113 F.4th at 991 (quoting *Loper Bright*, 603 U.S. at 400), the FDA's

position is correct that "caused by" in 21 U.S.C. § 355(j)(5)(D)(i)(IV) does not require but-for causation.

"[W]hen 'addressing a question of statutory interpretation, we begin with the text[,]' [a]nd in 'constru[ing] [the] text, we look to the ordinary meaning of its key terms.'" *Pac. Gas & Elec. Co. v. FERC*, 113 F.4th 943, 948 (D.C. Cir. 2024) (first quoting *City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018); and then quoting *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024)). "Cause," in this context, is defined as "a person, thing, fact, or condition that brings about an effect or that produces or calls forth a resultant action or state" and "indicates a condition or circumstance or combination of conditions and circumstances that effectively and inevitably calls forth an issue, effect, or result." *Cause*, WEBSTER'S THIRD NEW INT'L DICTIONARY 356 (2002); *Cause*, BLACK'S LAW DICTIONARY (7th ed. 1999) ("To bring about or effect"). The "ordinary meaning," *Telematch, Inc. v. U.S. Dep't of Agric.*, 45 F.4th 343, 348 (D.C. Cir. 2022), of "cause" as "a condition . . . that brings about an effect," *Cause*, WEBSTER'S THIRD NEW INT'L DICTIONARY 356 (2002), leads to the natural conclusion that the "caused by" requirement in 21 U.S.C. § 355(j)(5)(D)(i)(IV) is satisfied as long as a change in or review of the requirements for approval of an ANDA imposed after the application was filed is one of the causes of failure to get tentative approval.

Further guidance on this issue is provided in a different statutory context by the D.C. Circuit, which interpreted the phrase "caused by" in the Foreign Sovereign Immunity Act's ("FSIA") jurisdictional provision, 28 U.S.C. § 1605(a)(7), as not requiring but-for causation. *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1128-30 (D.C. Cir. 2004). This illustrative analysis notes that "[a]s a moment's inspection of" the statute "makes clear, there is no textual warrant for [but-for causation]: the words 'but for' simply do not appear; only

'caused by' do." *Id.* at 1128. The Court specifically distinguished its interpretation of "caused by" in the jurisdictional provision as a distinct inquiry from the level of causation needed to sustain a cause of action under the FSIA. *Id.* at 1129. The D.C. Circuit's conclusion reinforces the plain meaning of "caused by" in 21 U.S.C. § 355(j)(5)(D)(i)(IV) does not require but for causation as the operative provision neither contains the words "but for" nor describes a type of causation needed to sustain a cause of action.

Moreover, when reviewing whether a drug is safe and effective to be marketed, numerous independent and sufficient causes may hinder tentative approval. 21 C.F.R. § 314.127 (providing independent and sufficient reasons why the FDA could refuse to grant approval to an ANDA); 21 U.S.C. §§ 355(b), (j) (same). Each of the independent, potential problems with an ANDA is a cause that may delay its approval. This underscores why the FDA, drawing on its "body of experience and informed judgment," contemporaneously and consistently, has read "caused by" as requiring a change in or review of requirements to be only one cause for failing to obtain tentative approval, Gov't's Reply at 12-13, and where, as here, the interpretation is consistent with the statute's plain meaning, such prior consistent agency interpretation is "especially useful in determining the statute's meaning." *Loper Bright*, 603 U.S. at 394.

In contrast, Norwich argues that textbook tort and criminal law demonstrate that "cause" means but-for cause and urges rejection of *Kilburn*'s reasoning as applied only to a jurisdictional statute. Norwich Mem. at 37-39, Norwich's Reply at 33-34. These arguments are unpersuasive for several reasons. First, Norwich relies on tort and criminal law cases that do not interpret the relevant phrase "caused by" but instead interpret "because" and "results from." *See Burrage v. United States*, 571 U.S. 204, 210-11 (2014) (criminal statute, 21 U.S.C. § 841(b)(1)(C), using "results from"); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346-48 (2013) (relying on

common law tort case law and doctrine to interpret the term "because" in 42 U.S.C. § 2000e-3(a)).  Second, and more fundamentally, the flaw in Norwich's position is that "[t]he judicial task when interpreting statutory language . . . is to discern how Congress used . . . *word[s] in the law*." *Thaler v. Perlmutter*, 130 F.4th 1039, 1048 (D.C. Cir. 2024) (emphasis added).  When creating causes of action for tort liability or criminalizing conduct, Congress legislates against the backdrop of "textbook tort law," *Nassar*, 570 U.S. at 346-47, and the "traditional understanding" of criminal causation, *Burrage*, 571 U.S. at 210-16.  The use of "caused by" at issue here, like the FSIA jurisdictional statute, 28 U.S.C. § 1605(a)(7), considered in *Kilburn*, is neither a tort or criminal statute, and thus the traditional jurisprudence applied to issues of tort liability or interpretation of criminal statutes is simply inapplicable.

Finally, and relatedly, Norwich's attempt to distinguish *Kilburn* on this point because of the "context" of the "FSIA" falls flat.  Norwich's Reply at 33-34.  The lesson from *Kilburn* is clear: "courts have departed from the but-for standard where circumstances warrant."  *Paroline v. United States*, 572 U.S. 434, 451 (2014).  The jurisdictional provision of the FSIA at issue in *Kilburn* and the statutory provision in 21 U.S.C. § 355(j)(5)(D)(i)(IV) do not create criminal, tort, or other type of liability nor provide the type of causation needed to sustain a cause of action and are best read as not requiring but-for causation.

In sum, the FDA's conclusion that Actavis' failure to obtain tentative approval within 30 months was caused by the FDA's determination that the change in requirements with respect to the dissolution studies needed for Actavis to show bioequivalence, is not contrary to law.[12]

---

[12]    Norwich passingly argues that even if there is no but-for requirement, the "FDA still failed to adequately assess whether a failure to obtain approval was 'caused by' a change in approval requirements." Norwich Mem. at 39-40; Norwich Reply at 35 ("FDA[] fail[ed] to apply the correct causation standard, or conduct any actual causation analysis, in its forfeiture assessment.").  "It is not enough," however, "merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work."  *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005).  Accordingly, "perfunctory and undeveloped arguments, and arguments that are

**IV.    CONCLUSION**

For the foregoing reasons, Norwich's motion for summary judgment is denied,

Norwich's motion for oral argument or, in the alternative, leave to file a surreply is denied, *see*

*supra* n.3, and the government defendants' and intervenor-defendants' cross-motions for

summary judgment are granted.

This Memorandum Opinion will be filed under seal for a brief period to allow the parties

an opportunity to request redactions of confidential business information before the public

docketing of the decision.  Recognizing the "'*strong presumption* in favor of public access to

judicial proceedings,' including judicial records," *In re Leopold*, 964 F.3d 1121, 1127 (D.C. Cir.

2020) (emphasis added) (quoting *United States v. Hubbard*, 650 F.3d 293, 318 (D.C. Cir. 1980)),

the parties are directed to submit jointly by 3:00 PM EST on April 18, 2025, any proposed,

minimum redactions, supported by analysis applying the *Hubbard* factors.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  April 17, 2025

_____
**BERYL A. HOWELL**
United States District Judge

---

unsupported by pertinent authority," like Norwich's argument here, "are deemed waived."  *Sherrod v. McHugh*, 334
F. Supp. 3d 219, 265 (D.D.C. 2018) (quoting *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013)).