IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORWICH PHARMACEUTICALS, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT F. KENNEDY JR., *et al.*,<br><br>*Defendants*,<br><br>and<br><br>TEVA PHARMACEUTICALS USA, INC.<br>and SALIX PHARMACEUTICALS, INC.<br><br>*Intervenor-Defendants.* | Case No. 1:25-cv-00091 |

## REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE CROSS-COMPLAINT

Salix seeks leave to file a cross-complaint against FDA in this matter to raise two issues that would become critical immediately if the D.C. Circuit reverses and remands to this Court: (1) whether Norwich's Paragraph III certification blocks immediate approval of its ANDA; and (2) whether a 30-month stay applies because of Norwich's Paragraph IV certifications. Mot. 1–2. FDA took no position on the motion and did not file any opposition.[1] Norwich (which is not a party to the cross-complaint) opposed but conceded Salix can raise the two issues "either before FDA or this Court," "once the D.C. Circuit issues its mandate." Salix Opp. 9. Norwich's only opposition is that Salix "cannot do so *now*." *Id.* (emphasis added).

Norwich misunderstands Salix's motion. Salix seeks leave to file a cross-complaint now so the Paragraph III and 30-month stay issues can be teed up for efficient resolution *if* the D.C.

---

[1] Teva Pharmaceuticals Inc., the other intervenor-defendant in this case, consented.

Circuit reverses this Court's decision regarding Actavis's 180-day exclusivity. The need to streamline that process has become apparent because Norwich recently asked the D.C. Circuit for an order that would require FDA to act within *14 days of the D.C. Circuit's mandate.* If Norwich's request were granted, that timing could foreclose Salix's ability to be heard on the two issues without a cross-complaint already in place.

The most efficient way to ensure these critical issues are addressed is for this Court to grant Salix's motion for leave to file a cross-complaint and then hold the responsive pleading deadline in abeyance. Then, in the event the D.C. Circuit reverses, this Court could lift the abeyance and order briefing on the Paragraph III and 30-month stay issues.

I. **The Paragraph III Certification and 30-month Stay Issues Need to be Addressed.**

As Salix explains in its cross-complaint, the Paragraph III and 30-month stay issues are additional reasons why Norwich's ANDA cannot be immediately approved, distinct and apart from Actavis's 180-day exclusivity. *See* Mot. Ex. A ¶¶ 4–7. If Norwich's ANDA and its subsequent amendments are treated as a single "application," Norwich's Paragraph III certifications for its 200 mg product blocks approval of the entire ANDA until 2029. *Id.* If Norwich's submissions for approval of the 550 mg and 200 mg products within the '370 ANDA are treated as two separate "applications," a 30-month stay applies from the date of the amendment adding the 550 mg strength. *Id.* At least one of these scenarios must be true, and either would prohibit immediate approval of Norwich's ANDA.

Norwich would prefer the two issues to never be addressed, so it has always argued they should be considered at some other time. Before this Court, Norwich incorrectly claimed that addressing the application of a 30-month stay would be "nonsense," because "FDA has already determined that final approval of Norwich's '370 ANDA is not prevented by any 30-month stay."

Norwich Reply iso Summ J. Mot. at 37 (Dkt No. 76). In the D.C. Circuit, Norwich simply asserted, with little explanation, Salix "does not (and cannot)" challenge either the 30-month stay or Paragraph III determination on appeal. Norwich CADC Reply Br. at 27 (Dkt No. 2139541). Now, Norwich contends Salix cannot raise the issues in a cross-complaint before this Court because "the pendency of an appeal deprives the district court of jurisdiction over the case until the mandate issues." Norwich Opp. at 2 (Dkt No. 100). Yet, Norwich acknowledges Salix *could* raise them in the future because "the appeal will conclude, and the mandate will issue." *Id.*

The problem with Norwich's current position is that it has requested the D.C. Circuit to "reverse with direction for the district court to grant Norwich summary judgment, issue the mandate forthwith, and order FDA to act on Norwich's '370 ANDA within *14 days of issuance of the mandate*." Norwich CADC Supp. Br. at 22 (Dkt No. 2152642); *see also* Norwich CADC Supp. Reply Br. at 11 (Dkt No. 2156703). To be sure, the D.C. Circuit need not necessarily grant the relief Norwich seeks even if it were to reverse this Court's decision on 180-day exclusivity. But Norwich has requested it, and the possibility of that exceedingly tight timeline is what creates the urgency of Salix's motion.

Under Norwich's requested timeline, it would be next to impossible for this Court to consider and issue decisions on a motion for leave to amend *and* merits briefing on the Paragraph III and 30-month stay issues before FDA would need to act. In order for there to be any opportunity to address the two issues, Salix would need to have a cross-complaint already in place and then be able to brief and obtain an order on the merits from this Court on an expedited basis. Otherwise, Salix would be forced to seek emergency relief on the two issues after the fact—in the form of a request for a temporary restraining order and/or a preliminary injunction—which would result in both immediate harm to Salix and place an additional burden on this Court and the parties.

Indeed, it is particularly important to consider all salient issues prior to an FDA final approval of an ANDA, because final approval can impact markets in irreversible ways. Recognizing the sensitivity of timing in the ANDA context, this Court has previously used special procedures to allow important legal issues to be resolved quickly when ANDA approval is at stake, especially when, as here, the legal issues are already known to the parties. *Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008) (ordering FDA to provide notice before making a decision that could result in approval, so the plaintiff would have an opportunity to seek emergency relief). This Court can and should take an additional procedural step here to ensure all critical issues can be considered prior to final approval of Norwich's ANDA.

## II.  This Court Can Grant Salix's Motion and Hold the Cross-Complaint in Abeyance.

Norwich asserts it has not located any case in which a court has allowed a cross-complaint to proceed while an appeal is pending. Opp. at 1. That, however, is not what Salix seeks. Norwich does not dispute (because it cannot) that this Court could address the Paragraph III and 30-month stay issues after the D.C. Circuit issues its mandate, if the D.C. Circuit reverses this court's decision on Actavis's 180-day exclusivity.

To the extent the timing of this motion is unusual, it is because *Norwich* is asking for extraordinary relief. *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 17 (2002) (recognizing the ordinary remand rule typically requires a remand to the agency sufficient to allow it to "bring its expertise to bear upon the matter," "evaluate the evidence," and "make an initial determination"). Regardless of the likelihood of Norwich receiving that unusual relief, Norwich has requested it, and Salix should be permitted to have a process in place to ensure critical issues do not go unaddressed.

If the Court grants Salix's motion for leave to file its cross complaint now, the Court could

avoid unnecessary burden on the parties by holding the responsive pleading deadline in abeyance and then order further briefing upon issuance of a mandate by the D.C. Circuit, if necessary. If the D.C. Circuit does issue Norwich's exact requested relief, having the cross-complaint on file would provide an opportunity for this Court to address the Paragraph III and 30-month stay issues in a streamlined manner without the need for an after-the-fact temporary restraining order or preliminary injunction process. If the D.C. Circuit were to reverse and remand but decline to impose specific timing, having the cross complaint on file would nonetheless create efficiencies. If the D.C. Circuit affirms, granting Salix's motion and holding the cross-complaint in abeyance will have expended minimal resources of the Court and the parties.

### III. Norwich's Arguments Collapse when Salix's Motion is Accurately Construed.

Each of Norwich's specific arguments stems from the premise Salix is seeking to litigate the issues in its cross-complaint before any further order from the D.C. Circuit. That is not what Salix is seeking. Therefore, each of those arguments is meritless.[2]

First, Norwich argues this court lacks jurisdiction to decide issues while on appeal because this court "does not regain jurisdiction over the aspects of the case involved in the appeal until the court of appeals issues its mandate." Norwich Opp. 2 (quoting *McManus v. D.C.*, 545 F. Supp. 2d 129, 133 (D.D.C. 2008)). That is irrelevant because, as explained, Salix seeks to prepare for circumstances *after* the mandate issues (if that mandate overturns this Court's summary judgment order).

Second, Norwich argues Salix cannot meet the requirements for altering a judgment under

---

[2] Because those arguments are entirely inapposite to Salix's motion, this section responds to each of them at a high level. To the extent Salix does not substantively respond to a subset or portion of those arguments, it is not conceding or waiving any right to respond to those issues if they are squarely presented in the future.

Rule 60(b) while the case is on appeal. *Id.* at 5–6. Again, Salix does not seek to advance the cross-complaint while the case is on appeal, it merely seeks leave to file it. And, in the event this court's summary judgment order is overturned, moving under Rule 60(b) would be unnecessary.

Third and finally, Norwich argues Salix is seeking "inconsistent remedies," asserting that if Salix prevailed on its cross-claims, it would "moot the appeal entirely" because it would "establish[] an independent bar to FDA approval" and "conversely, if Salix prevailed on appeal, it would moot Salix's proposed cross-claims." *Id.* at 8. It is true that Salix's cross-claims would provide independent bars to FDA approval—the fact that there are additional bars to final approval of Norwich's ANDA is a result of Norwich's own ANDA and litigation strategy. But that fact does not "moot the appeal" when Salix seeks leave to file a cross-complaint that would be addressed only *after* the appeal concludes. Norwich is wrong that prevailing on appeal would moot Salix's cross-claims; the issues on appeal and in the cross-claims are different. Even if the D.C. Circuit were to affirm, there is always a possibility that Actavis could in the future be found to have forfeited its 180-day exclusivity on some other basis. Also, the Paragraph III certifications in Norwich's '370 ANDA prevent approval for more than a year after Actavis's 180-day exclusivity has run its course. Ultimately, both of Norwich's points are yet again irrelevant. The possibility of a D.C. Circuit affirmance presents no obstacle to this Court granting Salix's motion, holding the cross-complaint in abeyance, and addressing it *if* the D.C. Circuit overturns this Court's decision on 180-day exclusivity.

## IV. Conclusion

Salix therefore respectfully requests this Court grant its motion to file the cross-complaint attached as Exhibit A to its motion.

Dated: February 27, 2026        Respectfully submitted,

/s/ Douglas A. Hastings
Douglas A. Hastings
Bryan M. Killian
Brendan J. Anderson
MORGAN, LEWIS &BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
bryan.killian@morganlewis.com

Michael J. Abernathy
Wan-Shon Lo
MORGAN, LEWIS &BOCKIUS LLP
110 North Wacker Dr.
Chicago, Ill. 60606
T: 312-324-1000

*Attorneys for Salix Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2026, I filed the foregoing with the Court's CM/ECF system, which will effectuate service on all counsel in this case.

/s/ Douglas A. Hastings
Douglas A. Hastings
